Merrimack
No. 82-059

THE STATE OF NEW HAMPSHIRE

v.

DWIGHT T. REYNOLDS

February 3, 1984

430

*Gregory H. Smith*, attorney general (*Loretta S. Platt*, assistant attorney general, on the brief, and *Brian Tucker*, assistant attorney general, orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant was indicted for unlawfully retaining stolen firearms (RSA 637:11, I(b)). After a jury trial in Superior Court (*Souter*, J.), he was found guilty. Before trial, the defendant moved to suppress certain statements and physical evidence gathered as a result of those statements. The Superior Court (*Dalianis*, J.) denied those motions, finding that the defendant's waiver of his *Miranda* rights was voluntary beyond a reasonable doubt. The statements and the physical evidence were admitted into evidence at the trial. The defendant appeals from the denial of his motion to suppress and from his conviction. We affirm.

According to the evidence adduced at the suppression hearing, the defendant was arrested on June 4, 1981, and charged with burglary. He was taken to the Franklin police station, where he was advised of his *Miranda* rights as required under the State and Federal Constitutions. *See State v. Nash*, 119 N.H. 728, 730–31, 407 A.2d 365, 367 (1979). The defendant stated that he understood those rights, gave his own definition of the rights, signed a written waiver and agreed to answer questions. There is evidence to support a finding that the police continued questioning the defendant until they felt they were making no further progress in the investigation.

The next day, the defendant was arraigned in Franklin District Court on burglary charges, and an attorney was appointed to represent him, but was not then present. Following arraignment, the defendant was returned to the police station and held in lieu of cash bail. Present with the defendant were Trooper Quint and Franklin Police Chief Anderson, who were attempting to contact the defendant's attorney by telephone because, as Quint testified, the police hoped that an agreement could be struck to "get some of the evidence back." They tried unsuccessfully for more than half an hour.

At that point, as Quint and Anderson were discussing arrangements for lunch, the defendant, according to Anderson's testimony, stated: "You guys seem very concerned about the missing guns. If I take you up to Hill to get them in the woods, will that help you consider P.R. bail for me?" According to Quint's testimony, he (Quint) then replied that they could make no promises but would consult with the county attorney and see if such a recommendation were possible. Quint also asked the defendant if he realized that he was making this offer without the benefit of counsel, that the police were making no promises, and that they could not guarantee that his bail would be reduced to personal recognizance. The defendant

replied: "Yes, I understand I can wait for my attorney, but let's get it over with."

The defendant then led the police to a remote wooded area and showed them where to find the weapons that were the subject of the indictment. Later, at the Franklin District Court, the police did recommend that the defendant be released on his own recognizance, which recommendation was accepted by the district court.

■ The defendant argues that his statements and his actions in leading the police to the weapons should have been suppressed because they were not made voluntarily. On appeal, the defendant makes his legal arguments solely with reference to the Fifth Amendment to the United States Constitution. We shall, therefore, decide the defendant's claims of error solely with reference to his rights under the Federal Constitution. *See State v. Miskolczi*, 123 N.H. 626, 628, 465 A.2d 919, 920 (1983) (where we reviewed the defendant's allegations of police misconduct by reference to the Federal Constitution alone due to his failure properly to raise the issues under the State Constitution).

■ The defendant's arguments regarding the voluntariness of his statement implicate two rights guaranteed by the fifth amendment. First, there is the right against self-incrimination, which is protected by the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966). The rights to counsel and silence of which the suspect is advised when given his *Miranda* warnings may be validly waived if done so knowingly, intelligently and *voluntarily. North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Second, there is the right to due process protected by the fifth and fourteenth amendments, which guarantees generally that our citizens will be treated with fundamental fairness by agents of the government. *Lisenba v. California*, 314 U.S. 219, 236 (1941). This right to due process would render inadmissible a statement that was made involuntarily, even after a suspect had made a valid waiver of his *Miranda* rights. *Payne v. Arkansas*, 356 U.S. 560, 567 (1958); *Brown v. Mississippi*, 297 U.S. 278 (1936).

The defendant contends that he had on June 4 asserted his right to remain silent; that he was not rewarned of his *Miranda* rights on June 5; that he, therefore, never waived his *Miranda* rights prior to his statements of June 5; that the police improperly evoked the statements from him; and that, as a consequence, his "right to cut off questioning" was not "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

The trial court did not specifically find whether the defendant had asserted his right to silence following his initial interrogation. The

State maintains that there is nothing in the record to support such a finding; that the defendant was not being subjected to interrogation when he made his statements; that the police had no obligation to readvise the defendant of his *Miranda* rights; and that the defendant initiated the discussion at issue.

The only indication in the record that the defendant asserted his right to silence on June 4 is a statement made by Deputy Sheriff Robert Dupuis of the Merrimack County Sheriff's Office. Dupuis, on direct examination, stated he believed the defendant had stopped the questioning. On cross-examination, Dupuis consulted his report and corrected himself and testified that it was Quint, and not the defendant, who had stopped the questioning on the afternoon of June 4, 1981, because no progress was being made.

■ ■ The defendant's right to silence encompasses his "right to cut off questioning," *Miranda v. Arizona*, 384 U.S. at 478, directed at him by the authorities. "Through the exercise of his option to terminate questioning, he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." *Michigan v. Mosley*, 423 U.S. at 103–04. The trial court found, beyond a reasonable doubt, that the defendant initiated the discussion which led to his inculpatory statement, and that the defendant made his statements voluntarily. By voluntarily initiating the discussion and making the offer, the defendant exercised the control over the questioning that the constitution guarantees him.

■ Furthermore, interrogation is a precondition to the application of the *Miranda* rule. *Miranda v. Arizona*, 384 U.S. at 467–68; *see Rhode Island v. Innis*, 446 U.S. 291, 302 (1980) (discussed in *State v. Beaupre*, 123 N.H. 155, 157–58, 459 A.2d 233, 235 (1983)). Consequently, the trial court's finding that the defendant had initiated the discussion concerning the weapons would also render meritless the defendant's argument that he should have been readvised of his *Miranda* rights.

■ This brings us squarely to the question whether the defendant's statements were voluntarily made for purposes of the due process clause of the fifth and fourteenth amendments. We recently stated that:

> "In proving voluntariness, the State must show that a confession was 'the product of an essentially free and unconstrained choice,' *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973), and was not 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any

improper influence.' *Bram v. United States*, 168 U.S. 532, 542–43 (1897) . . . ."

*State v. Copeland*, 124 N.H. 90, 92, 467 A.2d 238, 240 (1983).

Neither this court nor the United States Supreme Court has adopted a *per se* standard to assess the voluntariness of a statement in the presence of some police conduct that could be deemed to have induced the defendant's statement. *See State v. Geldart*, 111 N.H. 219, 221, 279 A.2d 588, 590 (1971).

█ █ Previous decisions of the United States Supreme Court "yield no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen." *Schneckloth v. Bustamonte*, 412 U.S. at 224. To be voluntary, a confession must be "the product of an essentially free and unconstrained choice." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961) (Frankfurter, J.). The decision to confess must be "freely self-determined," *Rogers v. Richmond*, 365 U.S. 534, 544 (1961), "the product of a rational intellect and a free will," *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). The defendant's "will to resist," *Rogers v. Richmond, supra* at 544, must not be overborne, nor can his "capacity for self-determination [be] critically impaired," *Culombe v. Connecticut, supra* at 602. The determination of voluntariness must be reached in the light of the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. at 226.

█ █ Under the "totality of the circumstances" test, the existence of a promise made to the defendant is not dispositive. *See State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153 (1977). Rather, all the facts must be examined and their nuances assessed to determine whether, in making the promise, the police exerted such an influence on the defendant that his will was overborne. There is no question, however, that the existence of a promise adds to the State's burden. *See State v. Nash*, 119 N.H. at 733, 407 A.2d at 368 (promise made by police to provide defendant with medical assistance if he admitted rape).

█ █ Where, as here, the *defendant* solicits a "deal" or initiates bargaining with the authorities, a promise on which the defendant claims to have relied in making his statement does not necessarily interfere with the free exercise of his will. The question of the voluntariness of the defendant's statement, therefore, remains a question of fact for the trial court. We will overturn the trial court's finding only if, after reviewing the record, we conclude that

it is contrary to the weight of the evidence. *State v. Scarborough*, 124 N.H. 363, 371, 470 A.2d 909, 915 (1983).

The record contains ample support for a finding that the defendant understood and voluntarily waived his *Miranda* rights, and that he later initiated negotiations for a recommendation of release on his own recognizance in lieu of cash bail. There is no evidence that at the time of the defendant's offer the police solicited that offer from him. After Quint cautioned the defendant about making the offer without benefit of counsel's advice, the defendant responded that he wished to proceed without first having talked with an attorney.

 On these facts, and looking at the totality of the circumstances, the trial court had a basis for ruling, beyond a reasonable doubt, that the defendant's statements and actions were voluntarily made.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.