Hillsborough
No. 86-442

## THE STATE OF NEW HAMPSHIRE

v.

## BRIAN SULLIVAN

November 5, 1987

*Stephen E. Merrill,* attorney general (*Tina Schneider,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J. The defendant was found guilty of armed robbery by a jury verdict. RSA 636:1. In this appeal, he challenges the Trial Court's (*Dalianis*, J.) denial of his motion to suppress his confession. We affirm.

The facts which are relevant to this appeal follow. On August 26, 1985, at approximately 7:50 p.m., an armed robbery occurred at a 7-Eleven store in Nashua. The Nashua police interviewed the clerk and learned that the suspect was armed with a knife, and that he took a package of Winston cigarettes, some bags of snack food and $120 to $150. After speaking with a witness who described the getaway vehicle and its license plate number, the police reported the information over the radio.

Shortly thereafter, another police officer stopped a vehicle with the reported license plate number. The driver implicated the defendant as the suspect who had robbed the store. The police obtained an arrest warrant for the defendant and went to the defendant's second floor apartment to execute the warrant.

The apartment was empty when the police arrived. They pushed the door open, to see if the defendant was hiding inside, and observed a knife, a package of Winston cigarettes and a bag of snack food on the table. One of the officers left the apartment to obtain a search warrant. After the apartment was secured, another officer was left stationed in the hallway leading to the apartment.

While the search warrant was being obtained, the defendant came upstairs. The officer at the scene asked him to sit down. The defendant started to sit down, but then leaped head first through the closed second-story window. He landed on the eaves above the front entrance, rolled over, and landed on the ground. The police apprehended him outside.

Thereafter, the police brought the defendant to a hospital, where he received medical attention for his fractured heel and wrist and his cut nose. The doctor gave him two capsules of painkiller and gave a police officer one more capsule to be taken by the defendant later, if necessary. The doctor released the defendant from the hospital after 2 1/2 hours, as he felt that it was unnecessary to keep him overnight.

At approximately 2:45 a.m., the police brought the defendant to the police station. Detective Brackett began to interview him at approximately 4:20 a.m. in the detective's office. The detective read the *Miranda* rights to him, and the defendant read the rights as printed on a form, and initialled them to indicate he understood them.

When asked if he would sign the waiver form, the defendant refused, stating that he did not want to answer "all of the questions." The detective responded by saying that the defendant did not have to answer all the questions. After Detective Brackett explained that he wanted to talk about the 7-Eleven robbery, the defendant agreed to talk about the robbery and subsequently implicated himself as the suspect responsible for the crime. When the detective began to ask questions concerning the defendant's motivations, the defendant refused to answer the questions and requested an attorney.

At 8:28 a.m., another officer read to the defendant his *Miranda* rights. The defendant waived them, signed the waiver form, and gave a detailed confession.

Prior to trial, the defendant filed a motion to suppress the statements made at the interviews. The trial court suppressed the later confession on the grounds that the defendant had previously invoked his right to counsel and had not initiated further conversation with the police. The trial court denied the suppression of the first statement, making specific findings beyond a reasonable doubt that the defendant voluntarily, knowingly and intelligently waived his rights, and that he made the statement voluntarily.

The defendant argues that the trial court erred in denying the motion to suppress the statement made during the first interview because the State failed to prove beyond a reasonable doubt that he had waived his *Miranda* rights and that his confession was voluntary. Since the defendant did not invoke specific provisions of the New Hampshire Constitution in his brief, we will only address the self-incrimination and due process issues as raised under the fifth and fourteenth amendments of the United States Constitution. *State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986); *Malloy v. Hogan*, 378 U.S. 1 (1964); *State v. Reynolds*, 124 N.H. 428, 432, 471 A.2d 1172, 1174 (1984).

The fifth amendment guarantees the defendant a right against compelled self-incrimination, and it is protected by the *Miranda* warnings. *State v. Reynolds, supra* at 432, 471 A.2d at 1174. The defendant may waive the rights to counsel and silence, as advised in the warnings, "provided the waiver is made voluntarily, knowingly and intelligently." *Id.*; *Moran v. Burbine*, 106 S. Ct. 1135, 1141 (1986); *Miranda v. Arizona*, 384 U.S. 444, 475 (1966). Due process "guarantees generally that our citizens will be treated with fundamental fairness by the agents of the government." *State v. Reynolds, supra* at 432, 471 A.2d at 1174.

■ Both the defendant and the State concede that under *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977) and *State v. Gullick*, 118 N.H. 912, 396 A.2d 554 (1978), the State's burden is to prove voluntariness in the waiver and in the statement "beyond a reasonable doubt." In *Phinney*, we rejected the United States Supreme Court's "preponderance of the evidence" standard to show that the confession was voluntary because "[t]he stakes are too high and the risk of error too great to permit a determination of admissibility to be decided by a balance of probabilities." *Id.* at 147, 370 A.2d at 1154; *see Lego v. Twomey*, 404 U.S. 477 (1972). After careful review of the record, we hold, as did the trial court, that the State met its burden.

■ The first question we are faced with here is what weight should be placed on the defendant's refusal to sign the waiver form, and on his mental and physical condition, in determining whether the defendant voluntarily waived his *Miranda* rights. In reviewing the defendant's waiver of his *Miranda* rights, we examine the "particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Johnson v. Zerbst*, 304 U.S. 456, 464 (1938). "The question is not one of form," but rather whether the defendant was "'adequately and effectively apprised of his rights.'" *Id.* (quoting *Miranda v. Arizona, supra* at 467).

■■ The defendant contends that the trial court did not give *any* weight to his refusal to sign the waiver. Explicit waiver is not necessary for a finding of a voluntary, intelligent, and knowing waiver. *North Carolina v. Butler, supra* at 375–76. "The signature or lack of it is merely one of those circumstances" which the trial court looks at when reviewing the "totality of the circumstances." *State v. Jones*, 125 N.H. 490, 493, 484 A.2d 1070, 1073 (1984). A refusal to sign a waiver form does not carry any assigned weight. The refusal may be weighted heavily if the defendant indicated that he did not want to talk at all; on the other hand, it may carry minimal weight if he orally waived his right to silence.

The detective read the *Miranda* rights aloud, and the defendant read these rights to himself and indicated that he understood the rights by initialling them. The detective testified that the defendant refused to sign the waiver because he did not want to answer all the questions. The detective further testified that when he told the defendant he wanted to ask questions about the 7-Eleven robbery, the defendant agreed to talk about it.

The trial court concluded that the defendant's refusal to sign "did not vitiate his oral waiver." The trial court did what it was required to do—look at the refusal in the "totality of the circumstances."

■ The defendant's mental and physical conditions can, in some cases, be determining factors on the issue of waiver. "Unless an accused understands his rights, there can be no voluntary, intelligent, and knowing waiver." *State v. Noel*, 119 N.H. 522, 525, 404 A.2d 290, 292 (1979); *see United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976). The significance of the defendant's mental and physical conditions depends upon how they affect the voluntariness of his actions. The defendant testified that he did not remember signing the waiver form or answering the questions because he was in pain and he was under the influence of intoxicants.

■■ The detective testified that the defendant was coherent, alert and responsive. Moreover, the treating doctor testified that the defendant was coherent and alert, and that the pain was "moderate" and probably did not interfere with his thinking. "[A] finding on this question [voluntariness] 'by the trial judge who stands in the best position to weigh credibility of witnesses will not be overturned unless contrary to the manifest weight of the evidence.'" *State v. Copeland*, 124 N.H. 90, 92, 467 A.2d 238, 240 (1984) (quoting *State v. Geldart*, 111 N.H. 219, 221, 279 A.2d 588, 590 (1971)). There was sufficient evidence to support the trial court's finding beyond a reasonable doubt that the defendant understood and waived his rights. In other words, the trial court was entitled to believe the detective and not the defendant.

■■ The defendant also argues that the State failed to prove beyond a reasonable doubt that the confession was voluntary. The United States Supreme Court recently clarified the purpose of reviewing voluntariness under the due process clause, stating that the purpose of such a review is to prevent police overreaching. *Colorado v. Connelly*, 107 S. Ct. 515, 520 (1986). "[C]ertain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 106 S. Ct. 445, 449 (1985). "The determination of voluntariness must be reached in light of the 'totality of the circumstances—both the characteristics of the accused and the details of the interrogation.'" *State v. Reynolds*, 124 N.H. at 434, 471 A.2d at 1175 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

The defendant asserts that the police purposely interviewed him when he was susceptible to interrogation. The interview took place at 4:30 in the morning, the defendant may not have had a choice to go to the interview room, and he was in pain and under the influence of intoxicants.

The defendant fails to show any improper techniques employed by Detective Brackett which would create a coercive environment. The time, 4:30 a.m., is certainly early, but there is conflicting testimony as to the defendant's condition. The trial court did "not find credible the defendant's testimony that he made the statements involuntarily in order to secure treatment for his pain."

Deferring to the trial court's assessment of credibility, we find that the police conduct was not overreaching, and that the evidence supports the trial court's finding beyond a reasonable doubt that the defendant's confession was voluntary.

*Affirmed.*

All concurred.