Rockingham
No. 86-527

### The State of New Hampshire

v.

### Diego Torres

March 10, 1988

*Stephen E. Merrill*, attorney general (*John S. Davis*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Diego Torres, appeals from his conviction for possession of marijuana with intent to sell (RSA 318-B:2, I, :26, I(a)(2)), alleging that the Superior Court (*Thayer*, J.) erred in denying his pre-trial motion to suppress a statement which he claims was the product of a custodial interrogation conducted without his having affirmatively waived his constitutional rights. For the reasons that follow, we reverse and remand for a new trial.

On August 28, 1985, the State police, pursuant to a warrant authorizing the search of the residence and person of the defendant, stopped and arrested him as he was driving his automobile on Route 95 in Portsmouth. Detective Sergeant Henry Carpenito testified that he read Torres his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), asked him whether he understood those rights, and asked whether he understood English. Torres responded affirmatively to both questions. Carpenito then asked Torres what the rights meant to him. Torres replied, according to Carpenito's testimony, "[t]hat anything I say you can use." State trooper John Pickering, also present at the arrest scene, testified that Torres did not appear to want to answer questions, but

appeared to want to think about his rights. No further conversation or interrogation occurred at the scene of the arrest.

The police took Torres to his home and explained that they had a warrant to search the premises. Torres responded by volunteering the location of certain drug contraband. No interrogation took place at the house.

The police conducted their search and, approximately two hours after the initial arrest, transported Torres to the Rockingham County Jail. Following his booking, Carpenito and State trooper Neil Scott took Torres into a small room to talk to him. Torres was neither readvised of his rights nor asked whether he wished to waive them.

Scott testified that as he entered the room Carpenito was talking to Torres, summarizing the severity of the crime and reviewing the items that had been seized in the search. Carpenito stated that, during a five-minute interrogation, he asked Torres whether he would cooperate and reveal his source of supply. Scott testified that Torres answered in the negative, but requested that the officers return a ledger that had been seized; Carpenito quoted Torres as stating "[t]here's a lot of money owed to me in there."

Prior to his trial, Torres moved to suppress his statement to the police concerning the ledger. Torres claimed, as the ground for suppression, that he had never been advised of his *Miranda* rights. The police testimony contradicted this. Torres' counsel, however, elicited testimony that no one ever asked Torres if he wished to waive his rights and then raised the issue of waiver with the trial court. Relying on *State v. Brodeur*, 126 N.H. 411, 493 A.2d 1134 (1985) and *State v. Bushey*, 122 N.H. 995, 453 A.2d 1265 (1982), the trial court denied the suppression motion, finding that (1) Torres had been given his *Miranda* rights, (2) Torres had not asserted either his right to remain silent or his right to counsel, (3) his statements had been made voluntarily, and (4) Torres had knowingly and intelligently waived his rights under both New Hampshire and federal constitutional standards.

■■ On appeal, the defendant does not challenge the trial court's finding that he was advised of his rights under *Miranda*; rather, he claims that he never waived those rights. The trial court correctly stated the standard for determining whether the defendant waived his *Miranda* rights:

"The State of New Hampshire has the burden of proving beyond a reasonable doubt based on the totality of [the] circumstances that the defendant . . . [voluntarily,]

knowingly and intelligently waived [his *Miranda*] rights."

*State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978). It is well-settled under *Miranda* that if custodial interrogation occurs without an attorney, after the defendant has been warned of his or her rights, the prosecution bears a heavy burden to show that the defendant has knowingly and intelligently waived those rights. *State v. Lewis*, 129 N.H. 787, 791, 533 A.2d 358, 360–61 (1987); *State v. Bushey, supra* at 999, 453 A.2d at 1267; R. MCNAMARA, 1 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 199 (1980 & Supp. 1987). The *Miranda* requirement establishes an objective set of procedures to counter the inherent pressures of custodial interrogations. *Id.* at § 197.

█ We note that the trial judge in the present case faced a difficult set of facts in making his ruling. The record and evidence before us indicate that no express waiver, either written or oral, was requested of the defendant by any interrogating officer. Of course, an express waiver is not necessary for a waiver to be valid. *North Carolina v. Butler*, 441 U.S. 369, 375–76 (1979); *see also State v. Sullivan*, 130 N.H. 64, 68, 534 A.2d 384, 386 (1987). However, the presumption is that a defendant does not waive any constitutional rights, and the burden is on the State to show otherwise. *Butler, supra* at 373; *State v. Gullick, supra* at 915, 396 A.2d at 556.

█ In the absence of an express waiver, we must ascertain whether, under the totality of the circumstances, the defendant's understanding of his rights coupled with his conduct supports the trial court's ruling that he otherwise voluntarily, knowingly, and intelligently waived his rights beyond a reasonable doubt. *Butler supra; Sullivan supra; Gullick supra.* On the record before us, we conclude that he did not.

In the present case, one State trooper testified that upon entering the interrogation room he heard the evidence being summarized by the interrogating officer. The interrogating officer conceded that no one ever asked Torres whether he wished to waive his rights. We stated recently that the "summarization of evidence [by police] prior to the defendant's opportunity to waive or refuse to waive his rights could be construed as questioning in fact, though not in form, and as intended to provoke . . . inculpatory responses [from the defendant] that might not be followed by an effective waiver. . . ." *State v. Lewis, supra* at 795–96, 533 A.2d at 363 (citation omitted). The custodial environment here is more akin to the procedures we

warned against in *Lewis* than it is to interrogation procedures that typically survive constitutional challenge.

We also stated in *Lewis* that "[t]he State . . . ran the risk that the break between the discussion of rights and any later waiver might be so long as to invite the claim the defendant was no longer thinking of the rights when he gave his apparent waiver, which would therefore be invalid, because it was unknowing." *Lewis*, 129 N.H. at 796, 533 A.2d at 363. In *Lewis*, mere minutes separated the discussion of rights from the question of waiver. In this case, however, Torres was advised of his *Miranda* rights out on the highway, immediately following his arrest. Thus, more than two hours elapsed between the time Torres was advised of his *Miranda* rights and the time he was interrogated, during which he was taken to his home, where the search was conducted, and was finally transported to jail.

■ We are perplexed by the actions of the law enforcement personnel who, in making this arrest after a lengthy and professional investigation, failed to make a timely request of the defendant that he waive his rights in writing or orally. While a signed waiver is not, in and of itself, either conclusive or necessary evidence that the defendant validly waived his rights, it certainly is relevant to such a determination. *Butler*, 441 U.S. at 373; *see generally Sullivan*, 130 N.H. at 68, 534 A.2d at 386 (defendant refused, then signed waiver of rights form); *Lewis*, 129 N.H. at 790, 533 A.2d at 360–61 (defendant signed a waiver of rights form after arrest for murder); *State v. Wood*, 128 N.H. 739, 740–42, 519 A.2d 277, 278–80 (1986) (defendant signed a waiver of rights and agreed to talk with police).

■■ Given the length of time that elapsed between the defendant's arrest and his interrogation, coupled with the events that transpired after his arrest on the highway, during the drive to his home, the search, and the drive to and booking at the jail, and given the manner in which the interrogation proceeded, we conclude that a reasonable doubt exists as to whether Torres knowingly and intelligently waived his rights in making the statement that he did. Mindful that we will not reverse the trial court's ruling on appeal unless it is contrary to the manifest weight of the evidence, *Wood*, *supra* at 742, 519 A.2d at 279; *State v. Reynolds*, 124 N.H. 428, 434–35, 471 A.2d 1172, 1175 (1984), we hold that, under the totality of the circumstances, the State has failed to sustain its burden of proving that this defendant waived his rights.

*Reversed and remanded.*

THAYER, J., did not sit; the others concurred.