Grafton
No. 88-174

THE STATE OF NEW HAMPSHIRE

v.

ALVIN D. DERBY, JR.

July 13, 1989

*John P. Arnold*, attorney general (*Ellen F. McCauley*, attorney, on the brief, and *John S. Davis*, assistant attorney general, orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

## MEMORANDUM OPINION

SOUTER, J. The defendant stands convicted of felonious sexual assault, RSA 632-A:3, and claims in this appeal that the Superior Court (*Morrill*, J.) erred in finding his apparent waiver of *Miranda* rights valid beyond a reasonable doubt. We affirm.

After the defendant's ten-year-old stepdaughter told a social worker on June 16, 1987, that the defendant had made sexual contact upon her, she and her siblings were taken to the Haverhill police station. When he learned the children were there, the defendant drove with his wife to the station, where he claims to have been treated rudely by the chief of police. He was agitated by the time he happened to encounter a State police detective, whom he asked why the children had been brought to the station. The detective testified that after calming the defendant, he left to find out why the children were there. Once he knew the reason, the detective returned to question the defendant.

The detective testified that he began the interview by reading a statement of *Miranda* rights from a printed form, having told the defendant to interrupt if he failed to understand. The detective explained that, although he asked the defendant to read the form for himself, the defendant's difficulty in reading without his glasses

led the detective to read the statement of rights to him again. When the detective asked the defendant to initial each statement to indicate that he understood it, the defendant initialed each one and signed a written waiver of rights and agreement to answer questions. After denying his stepdaughter's charges, the defendant made some incriminating statements that prompted the motion to suppress.

The defendant relies not only on the fifth and fourteenth amendments of the National Constitution as applied in *Miranda v. Arizona*, 384 U.S. 436 (1966), but on part I, article 15 of the State Constitution, the latter presumably for the sake of this court's adoption of a reasonable doubt standard for the State's proof of *Miranda* waivers. *See State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978); *cf. Colorado v. Connelly*, 107 S. Ct. 515, 523 (1986) (proof by preponderance adequate under National Constitution). Although the State asks us to overrule *Gullick*, that issue is not comprehended by the question presented in the defendant's notice of appeal, *see* SUP. CT. R. 16(3)(b), nor was it added by order of the court, *id.*; *id.* (4), or raised in the trial court, *see State v. Laliberte*, 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984). This is therefore not the occasion to revisit *Gullick*, and we decline for like reasons to address the State's argument that *Miranda* was inapposite because the questioning was not custodial.

The defendant attacks the trial court's finding of knowing, intelligent, and voluntary waiver, *see Miranda v. Arizona, supra* at 444; *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986), by positing the effect of the disconcerting circumstances on a man afflicted, as he testified he was, with multiple sclerosis, liver damage, epilepsy, and Agent Orange exposure, and receiving half a dozen medications. As relevant, however, as these conditions undoubtedly might be, *see State v. Sullivan*, 130 N.H. 64, 69, 534 A.2d 384, 387 (1987), their significance was an issue of fact for the trial court, which had evidentiary grounds on which the finding of an adequate waiver can be seen to have been reasonable.

While it is true that testimony, supplied entirely by the defendant and his wife, tended to show that the combined effects of the illnesses and medications interfered with the defendant's comprehension when he was upset, the detective's evidence indicated adequate intellectual capacity at the time in question. The detective testified that he managed to calm the defendant before proceeding (though later during the questioning, the defendant wept), and he said the defendant gave no sign of incapacity to follow the *Miranda* litany and complained of nothing beyond difficulty in reading,

having no glasses with him. As against this evidence, the artificiality of the defendant's testimony may well have struck the trial court; after explaining that his overriding concern had been to find out why the children were at the police station, the defendant testified that the first thing he told the detective when they went upstairs to talk about that very subject was that he did not "comprehend very well when [he got] nervous or upset . . . ."

On the issue of voluntariness, there was no evidence of "intimidation, coercion, or deception." *Moran v. Burbine, supra* at 421. Although the defendant argues that his volition was subordinated to his desire for information about his children, there is nothing in the record beyond the defendant's bare assertion to indicate that the police conditioned any disclosure about the children on his making a *Miranda* waiver. Rather, the detective simply took the cautious course of following the *Miranda* protocol before explaining the children's situation, lest the disclosure elicit some remark from the defendant that might later be seen as a response to covert questioning in violation of *Miranda. See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *State v. Lewis*, 129 N.H. 787, 795–96, 533 A.2d 358, 363 (1987).

Nothing in the record, therefore, renders the trial court's findings unreasonable in accepting the persuasive, albeit not dispositive, evidence of the signed waiver. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

*Affirmed.*

All concurred.