Hillsborough
No. 89-395

THE STATE OF NEW HAMPSHIRE

v.

LORENZO ZURITA

December 28, 1990

*John P. Arnold,* attorney general (*Peter G. Beeson,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief for the defendant.

HORTON, J.   The defendant was convicted in a jury-waived trial in Superior Court (*Pappagianis,* J.) for felonious sexual assault, RSA 632-A:3, III. In this appeal, the defendant assigns error to the denial by the Superior Court (*O'Neil,* J.) of his motion to suppress certain statements he made to the police on the day of his arrest. He contends that the record does not support the court's finding that he knowingly and intelligently waived his *Miranda* rights prior to making the statements. *See Miranda v. Arizona,* 384 U.S. 436 (1966). We affirm.

The defendant was arrested by a Nashua police officer in the early evening of June 19, 1988. The arrest was made immediately after identification by the nine-year-old victim, who accompanied the officer in a cruiser search. As the officer emerged from his cruiser, the defendant made several unsolicited statements in articulate English to the effect that he regretted what he had done and would never do it again. The officer immediately advised him not to speak and began to administer *Miranda* warnings. The defendant, however, contin-

ued to make apologetic statements, after which the officer placed him under arrest and had him taken to police headquarters.

At the police station, the defendant, a recent Chilean emigrant, was advised of the charges against him and, at about 11:00 p.m., was interviewed by detectives Robert D. Henderson and Michael Jones. Neither detective was familiar with Spanish, apparently the defendant's native tongue, and the interview was conducted entirely in English. The defendant was read his *Miranda* rights in English and signed an English language *Miranda* waiver form. He then dictated and signed a two-page confession, which stated, in articulate English, that he had sexually assaulted the victim.

Prior to the defendant's trial, he sought to suppress "any and all statements obtained from him by the State on or about June 19, 1988." He claimed that, due to his limited understanding of English, he had been unable to comprehend certain of his *Miranda* rights and, thus, had not knowingly and intelligently waived them.

■■ The statements of June 19, 1988, fall into two general categories. The first category includes the statements made by the defendant to the arresting officer at the time of his arrest. The second category consists of the statements made during the custodial interrogation at the police station. Neither at the hearing on the motion to suppress, nor in the submissions of the defendant to this court, did the defendant choose to challenge the prosecution's use of the first category of statements. This absence of a challenge is entirely appropriate because the brief statements made by the defendant at the time of his arrest were not incident to "'express questioning or its functional equivalent.'" *State v. Sweeney*, 124 N.H. 396, 400, 469 A.2d 1362, 1364 (1983) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). Therefore, these statements do not fall under the *Miranda* protections. *Sweeney supra.* The second category includes extensive disclosures made during the interview with detectives Henderson and Jones, notably the signed confession which was used by the State at the defendant's trial. These statements were produced by custodial interrogation and had to be made under an effective *Miranda* waiver or, on successful suppression challenge, be useless to the prosecution. *See Miranda*, 384 U.S. at 479.

The witnesses at the suppression hearing gave conflicting testimony concerning the defendant's understanding of his *Miranda* rights during the June 19, 1988 interview. Detective Henderson testified that the interview lasted about an hour, and that he began it by advising the defendant of the charges against him. Henderson then

inquired into the defendant's ability to speak and understand English. According to Henderson, the defendant stated that he had been in the United States since February, 1988 (approximately four months prior to his arrest and over a year prior to the suppression hearing), and that he could understand English as long as it was spoken slowly to him. Henderson then slowly read to the defendant his five *Miranda* rights, pausing after each to ask him if he understood it and moving on to the next only after the defendant had answered in the affirmative. Although Henderson spent ten minutes completing this process, he did not ask the defendant to explain his *Miranda* rights in his own words.

Detective Henderson then informed the defendant that he was free either to waive his *Miranda* rights or to remain silent. Before signing the waiver form, the defendant posed a question to Henderson: "If I decide that I want to stop talking to you or I change my mind during the interview, if I tell you to stop, will that be the end of it?" Henderson replied that he had the right to cease answering questions at any time. Henderson further testified that, although the defendant spoke with an accent—at times in broken sentences—and was visibly upset at the interview, his English was easily understood. Although an interpreter was available at the police station at the time of the interview, Henderson did not feel one was necessary because:

> "[B]ased on my observations and my experience as a police officer—I've done this probably a thousand times—I can usually tell when somebody doesn't understand what you are saying to them. [The defendant] gave me no indication that he didn't understand any of [his *Miranda*] rights. Had he, I would have immediately stopped and gotten an interpreter, because I've done that before, and that's my policy."

Detective Jones also testified at the suppression hearing, stating that he had administered *Miranda* warnings hundreds of times in the past. Jones corroborated Henderson's testimony concerning the defendant's statements at the interview and made identical assessments concerning the defendant's ability to understand and to speak English at the interview. Jones also stated that he transcribed the defendant's two-page oral confession virtually verbatim and read each sentence of the confession back to the defendant to make certain that the defendant concurred with the content and phrasing of each sentence.

The next witness to testify at the hearing was Susan Jenkins, an adult tutorial language program coordinator called by the defense as an expert on the defendant's ability to understand English. Relying on the results of a standardized test that Jenkins administered to the defendant in December of 1988, she testified that his English comprehension "was below a fourth grade level," that it had probably been at an even lower level on June 19, 1988, and that to understand *Miranda* warnings one should possess at least a sixth-grade level of comprehension. Contrary to the testimony of Henderson and Jones, Jenkins concluded that the defendant could not have completely understood his *Miranda* rights at the interview, notwithstanding his contemporaneous statements to the contrary. These statements of understanding, according to Jenkins, might have been attributable to his desire, as a recent immigrant, to please the police. She further suggested that the preferred method for ensuring that a defendant understands his *Miranda* rights is to have the defendant restate them in his own words. She also stated that it would have been impossible for anyone to determine in ten minutes (as detective Henderson claimed to have done) that the defendant had understood them.

Jenkins testified, however, that her evaluation of the defendant's ability to understand his *Miranda* rights was based only on the test and not on any information concerning the circumstances surrounding his confession. Further, there was some uncertainty as to the accuracy of the test results that formed the basis of Jenkins's opinion. She stated that she personally had no scientific knowledge either of the content of the test or of the accuracy of its results. The test, administered well after the defendant's arrest and without inherent reliability controls, could be subject to manipulation by the defendant. Consequently, the court informed the parties that it "may or may not" credit her testimony.

The defendant testified at the suppression hearing, partly through an interpreter, that he had not been able to understand entirely the *Miranda* rights read and explained to him following his arrest and that he had told the police otherwise only because he had thought at the time that he did understand them. He maintained that the typed confession at issue was not in his own words. In addition, the defendant stated that in his native Chile a citizen must respond to all questions asked by the police.

As for his familiarity with English, the defendant testified that in 1986, before moving to the United States, he had taken an English

course two hours a week for six months although he had had no outside opportunities to practice English while in Chile, and that he had taken another English course while in the United States. He stated that when he arrived from Chile he lived with his brother, with whom he spoke Spanish. He further testified that his job as an automobile mechanic required him to read English but that his brother had helped him in this regard by translating car manuals for him. His brother had also acted as an interpreter whenever the defendant communicated with his defense counsel. The defendant also stated that while in Chile he had been employed as the administrator of a law office.

In its order denying the defendant's motion to suppress, the superior court found:

"While defendant has some difficulty in expressing himself in English, he does quite well understanding the English language. . . . Based on the totality of the evidence, the court finds beyond a reasonable doubt that the police gave the *Miranda* warnings, that the defendant understood and waived those rights, and that his statement was voluntarily given."

■ On appeal from the denial of his motion to suppress, the defendant claims that the superior court abused its discretion in finding that he knowingly and intelligently waived his *Miranda* rights. The defendant correctly asserts that, to withstand reversal on appeal, this finding must have been made beyond a reasonable doubt. *See State v. Bushey*, 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982). We hold that the record, viewed in the light most favorable to the State, *Bushey supra*, adequately supported the court's ruling that, beyond a reasonable doubt, the defendant knowingly and intelligently waived his *Miranda* rights.

■■ The order of the court denying the motion to suppress reflects a decision based not on any single factor but, correctly, on the totality of factors that evidenced the defendant's knowing and intelligent waiver of his *Miranda* rights. *See State v. Brodeur*, 126 N.H. 411, 416–17, 493 A.2d 1134, 1138 (1985). Because the defendant exhibited some difficulty following spoken English, Henderson explained his rights slowly, one at a time, and the defendant answered each time in the affirmative when asked whether or not he understood them. The defendant never indicated, either explicitly or by the implication of his responses, that his alleged difficulty with English prevented him from understanding his *Miranda* rights. On the

contrary, he asked a detailed question about his right to remain silent (perhaps his most important right in the context of this case), and, according to police detective Jones, he carefully dictated and reviewed a two-page confession in English. Although neither detective went so far as to ask the defendant to explain each of his rights in his own words as a means of assuring that he understood them, "an explanation of *Miranda* rights by a defendant is not ordinarily necessary for a knowing and intelligent waiver to occur. . . ." *State v. Bushey supra.* Given the indications that such a waiver did occur, it was not necessary in this case. Finally, detectives Jones and Henderson, who had extensive experience administering *Miranda* warnings and taking statements from suspects, both believed that the defendant understood and voluntarily waived his *Miranda* rights.

■■ The defendant contends, however, that reasonable doubt exists as a matter of law because the detectives failed to employ an interpreter, who was available, to ensure that the defendant understood his rights. We disagree. Although the use of an interpreter may be the preferred method for securing a knowing and intelligent waiver of a defendant's *Miranda* rights where, as here, some question existed at the outset concerning his ability to understand English, the defendant fails to cite any authority mandating its use as a matter of law. To the contrary, the issue of whether a waiver is knowing and intelligent is one of fact, to be decided on a case-by-case basis, and no single factor will determine its resolution as a matter of law. *See Perri v. Director, Dept. of Corr. of Ill.*, 817 F.2d 448, 451–52 (7th Cir.), *cert. denied*, 484 U.S. 843 (1987). Thus, the absence of an interpreter did not preclude the court from finding that the State met its burden of proof.

■■ The defendant further contends that the opinion of the defendant's expert witness, which was contrary to the opinions of detectives Henderson and Jones, was unrebutted by any "expert" testimony proffered by the State, and thus precluded the court from finding beyond a reasonable doubt that the defendant acted knowingly and intelligently. In reviewing the court's ruling, however, we must view the record in the light most favorable to the State, resolving issues of credibility in the State's favor. *Bushey*, 122 N.H. at 999, 453 A.2d at 1267. The testimony of the defendant's expert was adequately rebutted by the consistent and apparently reliable testimony of police detectives Henderson and Jones, and the court, as the finder of fact, was free to find the defendant's expert's testimony, the accuracy of which was questionable in any case, controverted.

*See State v. Sullivan*, 130 N.H. 64, 69, 534 A.2d 384, 387 (1987). The court likewise was free to discredit any of the testimony of the defendant that may have contradicted that of the police officers.

The defendant argues, however, that to discredit the testimony of the defense witnesses would be inconsistent with our analysis in *State v. Bushey*, 122 N.H. at 999–1000, 453 A.2d at 1267–68, where we reversed a trial court's ruling that a defendant with an abnormally low I.Q. had knowingly and intelligently waived his *Miranda* rights. Although the record in *Bushey*, like the one here, included expert testimony to the effect that the defendant could not have understood his *Miranda* rights, our holding there was predicated upon a transcript of the police interrogation. The accuracy of that transcript was not disputed, and the transcript discredited the testimony of two police officers that the defendant had adequately waived his *Miranda* rights prior to confessing. *See id.* Thus, in *Bushey*, we did not pass judgment on competing claims of witness credibility. There is nothing in the record here that requires us similarly to discredit the testimony of detectives Henderson and Jones.

The defendant's final claim of error is that his testimony in English at the suppression hearing should not have been considered by the court as evidence that the defendant understood enough English at the time of his arrest to knowingly and intelligently waive his *Miranda* rights. The defendant concedes, however, that his ability to speak English at the suppression hearing was at least marginally probative of his skill in the language ten months earlier, *i.e.*, at the time of his arrest. As he has failed to demonstrate that this evidence was used for an improper purpose, we find no merit to his final claim.

*Affirmed.*

All concurred.