Hillsborough-northern judicial district
No. 99-088

### THE STATE OF NEW HAMPSHIRE

v.

### ARTURO DUMAS

October 11, 2000

*Philip T. McLaughlin*, attorney general (*Charles T. Putnam*, senior assistant attorney general, on the brief, and *Brian Graf*, senior assistant attorney general, orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Arturo Dumas, a borderline mentally retarded man, was convicted by a jury of manslaughter, *see* RSA 630:2, I(b) (1996), for which he was sentenced to fifteen to thirty years in prison. The sole issue presented by this appeal is whether the Superior Court (*Barry*, J.) erred in holding that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

The following facts were adduced at trial. The defendant, who has a full-scale I.Q. of 73 or 74, was arrested following a shooting. After the shooting victim's death nine days later, the defendant was charged with first degree murder.

Three hours after the shooting, police detectives Peter Waligura and James Kinney advised the defendant of the charges against him.

Before advising the defendant of his *Miranda* rights, Detective Kinney asked the defendant if he could read and write. The defendant told the detectives that while he could write, he "could not read too good." Detective Kinney then slowly read the defendant his *Miranda* rights. After the detective read each right and asked the defendant if he understood it, the defendant said that he understood the right and initialed the form accordingly. The defendant never said that he did not understand his rights; nor did he ask the detectives any questions about them.

After advising the defendant of his rights, Detective Kinney read the last two questions on the form. The first asked the defendant if he understood each of the rights. The second asked whether he was willing to talk to the officers and answer their questions. After each question was read to him, the defendant initialed the "yes" line for that question and then signed the form. The defendant then told the detectives about the shooting, admitting that he shot the victim because of a prior altercation. The entire interview lasted two hours.

Prior to trial, the defendant moved to suppress his statements, claiming that the police obtained them in violation of his *Miranda* rights. He claimed that, because of his mental impairments, he was unable to understand his *Miranda* rights and, therefore, could not have validly waived them. After a hearing, the trial court denied the defendant's motion.

Although the defendant's motion to suppress raised both State and federal constitutional claims, on appeal he relies solely upon the State Constitution. We limit our analysis accordingly. *See State v. Paulsen*, 143 N.H. 447, 454, 726 A.2d 902, 907 (1999).

"Recognizing that a trial court is in the best position to weigh the credibility of the witnesses, we will not reverse its finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary." *State v. Prevost*, 141 N.H. 647, 651, 690 A.2d 1029, 1032 (1997) (quotation omitted).

■ "In order to introduce a defendant's statements made during custodial interrogation, the State must prove beyond a reasonable doubt that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights." *State v. Gagnon*, 139 N.H. 175, 177, 651 A.2d 5, 7 (1994) (quotation omitted). "[T]here is no per se rule that a person with low intelligence cannot waive his *Miranda* rights. Rather, the determination of whether a person in fact knowingly and intelligently waived his *Miranda* rights is to be made after consid-

ering the totality of the circumstances." *State v. Bushey*, 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982). A defendant's mental capability is but one factor that should be considered. *See id.*

The trial court based its ruling that the defendant understood his *Miranda* rights and knowingly, voluntarily, and intelligently waived them upon the following: (1) the testimony of the two detectives, which the court found credible, demonstrating how Detective Kinney read each *Miranda* right to the defendant slowly, stopping between sentences to make sure the defendant understood the rights; (2) the testimony of the State's expert that when he read the *Miranda* warnings to the defendant, the defendant appeared to understand them and said that he could understand them if they were read to him slowly; (3) the fact that the defendant initialed each right and signed the waiver form; (4) the defendant's statement to his own expert that if the police asked him to sign something that he did not understand, he would not sign it; (5) the State's expert's testimony that the defendant is not overly suggestible; (6) the State's expert's testimony that the defendant is capable of understanding his *Miranda* rights and their waiver; (7) the fact that the defendant chose not to reveal certain facts during the police interview, demonstrating that he was capable of making choices; (8) the fact that the defendant refused to agree to a search of his wife's car, demonstrating that he understood that he could refuse the detectives' requests; (9) the undisputed lack of undue influence during the interview; (10) the fact that the detectives informed the defendant of the charges against him before questioning him; and (11) the defendant's prior arrest, indicating prior experience with the police.

The defendant asserts that three factors create a reasonable doubt as to the validity of his *Miranda* waiver. First, he argues that the State's expert's opinion leaves a reasonable doubt as to whether the defendant was capable of understanding that any statement he made to the police could be used against him at trial. He observes that the State's expert opined that the defendant was not "totally incapable" of waiving his *Miranda* rights and that he was capable of understanding that he could remain silent and had a right to counsel, but made no mention of whether the defendant understood that anything he said could be used against him at trial.

The defendant misconstrues the State's expert's opinion and testimony. In addition to opining that the defendant's "deficits do not render him totally incapable of understanding the meaning and effect of his waiver of *Miranda* rights," the State's expert stated that the defendant "was capable of understanding [his *Miranda*]

rights after I had presented them to him." At the suppression hearing, the State's expert testified that the defendant had "the capacity to understand the essential elements of [his *Miranda*] rights." He further testified that as he read the defendant his *Miranda* rights, the defendant "recognized that he was understanding the rights," and said that he understood them because the expert read slowly. The expert testified also that the defendant said that he could understand his rights when they were read to him slowly.

◼ The trial court relied upon the State's expert's opinion and testimony to find that despite the defendant's borderline intelligence, he is capable of understanding the meaning and effect of his waiver of his rights. When viewed in the light most favorable to the State, we hold that the record supports this finding.

◼ Next, the defendant asserts that because the trial court ruled that he needed special accommodations to understand the trial better, and since no such special accommodations were made for him during the police interview, his *Miranda* waiver is invalid. We disagree. The police did accommodate the defendant by reading his *Miranda* rights to him slowly, and the State's expert testified that the defendant was capable of understanding his *Miranda* rights when they were so read. Under these circumstances, we hold that no other special accommodations were necessary.

We note, however, that the waiver form used by the police in this case was less explicit than desirable. While the form explains the rights themselves in relatively simple language, it does not include an express waiver. We strongly urge that this form be amended to include an express waiver. *See, e.g., State v. Benoit*, 126 N.H. 6, 24, 490 A.2d 295, 307 (1985).

◼ Finally, the defendant argues that the lack of a transcript of the police interview creates reasonable doubt *per se* as to the validity of his *Miranda* waiver. He cites no controlling authority for this proposition, which we reject. The testimony described above was a sufficient record upon which the trial court could rely.

Based upon our review of the totality of the circumstances, construed in the light most favorable to the State, we cannot say

that the trial court's finding was contrary to the manifest weight of the evidence.

*Affirmed.*

NADEAU, J., concurred; GROFF, MANGONES, and MOHL, JJ., superior court justices, specially assigned under RSA 490:3, concurred.