Manchester District Court
No. 98-471

IN RE WESLEY B.

November 22, 2000

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

MANGONES, J., superior court justice, specially assigned under RSA 490:3. Wesley B., a juvenile, appeals an adjudication of delinquency based on a charge of arson. *See* RSA ch. 169-B (1994 & Supp. 1999). He submits that the Manchester District Court (*Lyons*, J.) erred in admitting his inculpatory statement. We reverse and remand.

The following facts were adduced at the adjudicatory hearing. On November 6, 1997, firefighting personnel responded to a house fire

reported at the Manchester residence of eleven-year-old Wesley and his family. While the emergency personnel were at the scene, Wesley approached a uniformed police officer who was directing traffic and told the officer that he had discovered the fire and had telephoned 9-1-1.

The uniformed officer notified police headquarters and a juvenile division detective was dispatched to the scene. Because the fire was active, the detective asked Wesley's mother if he could bring Wesley to the police station for an interview. Wesley's mother agreed, but did not accompany her son. She agreed to pick him up at the station in a half hour. At that time, Wesley was barefoot and dressed only in a tee shirt and trousers.

The detective interviewed Wesley alone for approximately two hours in the juvenile division at the Manchester Police Station. He gave Wesley some juice, read his rights to him from the juvenile *Miranda* form, *see State v. Benoit*, 126 N.H. 6, 22-24, 490 A.2d 295, 306-07 (1985), and proceeded to inquire about the fire and its discovery. Wesley explained that he awoke to the fire and provided several different theories as to the fire's cause. The detective advised Wesley that he did not believe these theories, and that he thought that Wesley was responsible. Wesley eventually admitted that he started the fire.

After the juvenile petition was filed, defense counsel requested a competency evaluation. The psychological expert, who was called by both the State and the defense at the competency hearing, found that Wesley had a severe language handicap in both the expressive and receptive areas. He noted Wesley's high degree of immaturity and regression and found that he was "just" competent to stand trial. Given Wesley's language impairments and short attention span, he recommended that defense counsel continually monitor Wesley's understanding of the court proceedings and that breaks be taken periodically.

The district court recognized that Wesley's young age and low I.Q. "cause[d] some pause" and, as a result, adopted adjudicatory hearing procedures for Wesley as suggested by the psychologist. The guidelines also included having the parties and witnesses use simple terminology. Breaks were taken after each hour of the hearing. Despite these measures, Wesley fell asleep three times during the proceedings.

Wesley filed a motion to suppress the admission of his statement, which was addressed by the district court during the adjudicatory hearing. The district court denied the motion, concluding that Wesley had not been in custody at the time of his interview, and

therefore was not entitled to *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and that his statement was voluntary.

On appeal, Wesley contends that at the time he gave his statement to the police he was in custody. He also asserts that he did not knowingly, voluntarily, and intelligently waive his constitutional rights. Finally, he contends that his statement was not voluntary and was therefore inadmissible under the State and Federal Constitutions. Because we conclude that his statement was not voluntarily given, we need not determine whether he waived his *Miranda* rights.

■ We analyze Wesley's constitutional claims first under the New Hampshire Constitution, relying on cases interpreting the Federal Constitution only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983). Under our State Constitution, the State must prove beyond a reasonable doubt that an accused's statements were voluntary. *See State v. Laurie*, 135 N.H. 438, 444, 606 A.2d 1077, 1080, *cert. denied*, 506 U.S. 886 (1992). Because we find protection under the New Hampshire Constitution, we need not engage in a separate federal analysis. *See State v. Goodnow*, 140 N.H. 38, 40, 662 A.2d 950, 951 (1995).

The determination of whether a confession is voluntary "is initially a question of fact for the trial court, whose decision will not be overturned unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *State v. Decker*, 138 N.H. 432, 436, 641 A.2d 226, 228 (1994).

> To be voluntary, a confession must be the product of an essentially free and unconstrained choice. The decision to confess must be freely self-determined, the product of a rational intellect and a free will. The defendant's will to resist must not be overborne, nor can his capacity for self-determination be critically impaired. The determination of voluntariness must be reached in the light of the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation.

*State v. Reynolds*, 124 N.H. 428, 434, 471 A.2d 1172, 1175 (1984) (citations, quotations, and brackets omitted).

■ If a person suffers from a mental or developmental condition that impairs that person's ability to comprehend his or her choices, that impairment must also be factored into a court's determination of voluntariness.

The due process clause of the State Constitution requires us to label, as involuntary, the statements of an individual who, because of a mental condition, cannot make a meaningful choice. However, mental illness does not, as a matter of law, render a confession involuntary. Rather, the trial court still must determine whether, given the totality of the circumstances, the defendant's statements were the product of a rational intellect and a free will.

*State v. Damiano*, 124 N.H. 742, 747, 474 A.2d 1045, 1048 (1984) (citation and quotation omitted).

In juvenile cases, other factors must also be considered. "This State long has recognized the common-sense fact that a child does not possess the discretion and experience of an adult, and that special procedures are required to protect juveniles, who possess immature judgment." *State v. Benoit*, 126 N.H. 6, 11, 490 A.2d 295, 299 (1985) (citations omitted).

We conclude that the trial court did not properly weigh all the relevant factors in conducting its review of voluntariness. The trial court was required to address not simply whether the minor's will was overborne, but also whether the juvenile's "capacity for self-determination [was] critically impaired." *Reynolds*, 124 N.H. at 434, 471 A.2d at 1175. Thus, whether the interview was coercive should have been measured by the nature of the interview within the context of Wesley's abilities. *See State v. Chapman*, 135 N.H. 390, 400, 605 A.2d 1055, 1062 (1992). The evidence presented by the State was insufficient to establish beyond a reasonable doubt that Wesley's decision to confess met the criteria set forth in *Reynolds*.

Wesley, an educationally impaired youth of low average intelligence, was eleven years old at the time of the interview. During the interview, the officer noted that Wesley was "slow," fidgety, and had trouble paying attention. When Wesley's attention wandered, the officer would try to "get him back to my attention." An evaluation prepared by the court-appointed psychologist revealed that Wesley was "very immature" and had reading abilities of the second grade, fourth month; math abilities of fourth grade, sixth month; and writing abilities of first grade, sixth month. The psychologist also testified that in his opinion, it was beyond the cognitive abilities of most eleven-year-old children to make a free and unconstrained choice about whether to speak to a police officer and that Wesley's impairments rendered it substantially more difficult for him to decide whether or not to confess.

The officer interviewed Wesley for close to two hours. He testified about his constant struggle to keep Wesley focused on him and his

questions. Wesley was not accompanied by his mother or any other person responsible for his welfare. The officer's questioning, while not verbally hostile or threatening, was inconsistent with the procedures later suggested by the psychologist, and adopted by the court, to address Wesley's language and attention deficits. The entire interview was conducted without any of the protections afforded to the juvenile at the hearing, where his mother, legal counsel, guardian ad litem, and psychological evaluator were present.

The trial court noted during the hearing that the psychologist's concerns about Wesley's competency were "ringing in my head." Many, if not most, of the concerns expressed by the court and the psychologist are relevant to issues concerning the voluntariness of Wesley's confession. As the psychologist noted:

> While his speech difficulties and immaturity pose problems, it is my feeling that they can be addressed if court and counsel are careful to recognize Wesley's limitations and precede [sic] with care. Provided that reasonable caution is used, it is my feeling that Wesley just meets the criterion for competency laid out in Dusky [v. United States, 362 U.S. 402 (1960),] and [State v.] Champagne [,127 N.H. 266 (1985)].

The repeated and prolonged questioning of eleven-year-old Wesley, despite his continued denial of any involvement in the fire, coupled with the absence of any supportive adult during the interview, lead us to conclude that Wesley's will was overborne.

We recently addressed the ability of a developmentally impaired defendant to waive his constitutionally protected rights in State v. Dumas, 145 N.H. 301, 761 A.2d 1063 (2000). In affirming the decision of the trial court, we found "no per se rule that a person with low intelligence cannot waive his Miranda rights." Id. at 302, 761 A.2d at 1065. Rather, we held that the validity of the waiver should be reviewed after considering the totality of the circumstances. Id. Unlike the present case, however, the adult defendant in Dumas not only was informed of the charges against him prior to questioning, but he also refused to accede to a request by detectives to search his wife's car, thereby exhibiting an ability to exercise discretion in his interaction with the police. None of these factors were present in this case.

■ After examining the totality of the surrounding circumstances including Wesley's age, educational level, educational impairments,

and the length of his solitary interview, we conclude that the district court's decision is contrary to the manifest weight of the evidence when viewed in the light most favorable to the State. The evidence presented before the district court was at best just sufficient to support a finding by a preponderance of the evidence that Wesley would be able to understand the juvenile proceedings if certain protective measures were in place. We cannot find that the State has established beyond a reasonable doubt that the confession was voluntary.

*Reversed and remanded.*

NADEAU and DALIANIS, JJ., concurred; GROFF and MOHL, JJ., superior court justices, specially assigned under RSA 490:3, concurred.