Hillsborough
No. 83-211

### The State of New Hampshire

v.

### Frank Jones

September 27, 1984

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief, and *Andrew L. Isaac,* assistant attorney general, orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   Before his trial for attempted murder the defendant moved to suppress his confession. The Superior Court (*Dunn,* J.) denied the motion subject to exception. Following the trial, and submission of the case to the jury, the defendant excepted to the court's answer to a question from the jury. We sustain the denial of the motion to suppress but hold that the court erred in its answer to the jury. We therefore reverse.

On September 18, 1983, two bombs were thrown into a house in Nashua. Its occupant told the police that he had seen the defendant run from the house immediately after the bombing. The occupant explained that he and the defendant had been feuding. Later that day the police found the defendant in Manchester. It is not clear on the record whether the police had then obtained a warrant for the defendant's arrest for the bombing, but there was a valid outstanding warrant for his arrest on unrelated misdemeanor charges. On that authority the police arrested the defendant. They did not explain the reason for the arrest or mention the bombing.

When they reached the Nashua police station, the police read the *Miranda* warnings to the defendant. He said that he understood them and signed a waiver of his rights under them. Immediately he began to talk about the subject of the unrelated misdemeanor charges. The police then told him they wished to talk about the bombing. The defendant denied knowledge of that until after he had inadvertently exclaimed that there was no way the victim could have seen him. Thereafter the defendant talked for several hours and made a confession. After he had completed his statement, how-

ever, he refused to sign a further written waiver or a written statement of the confession. He testified that a lawyer had told him that an unsigned statement could not be used against him.

Prior to trial the defendant moved unsuccessfully to suppress the written statement as prepared by the police, and the State later introduced it into evidence. During closing argument defense counsel argued to the jury that the defendant's refusal to sign was evidence that the written statement was inaccurate. During their deliberations the jurors sent out the question whether "the lack of a signature on Mr. Jones' statement, [meant] a complete denial of the statement." The court responded, "[t]he answer is no." Defense counsel excepted to this answer. He argued that the jury had posed a "factual question" and that "they should be instructed to rely on their own recollection of the evidence in determining that issue." The assistant county attorney argued that the question was one of law and that the court's answer was correct. The court gave no further instructions. The jury returned a verdict of guilty.

On these facts the defendant's first assignment of error is the court's denial of the motion to suppress the confession. Defendant's brief in no way raises the New Hampshire Constitution as a basis for suppressing the confession, but relies on *Miranda v. Arizona*, 384 U.S. 436 (1966), a case construing the Federal Constitution, and cases interpreting *Miranda. But see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). He argues that a failure to inform him that the police wished to discuss the bombing prior to his waiver of *Miranda* rights "casts doubt on the validity of the original waiver." He also argues that his refusal to sign the statement "militates against a valid waiver."

The significance of a defendant's knowledge of the subject of the questioning arises from the requirement of *Miranda v. Arizona*, 384 U.S. 436 (1966), that a waiver of the rights to silence and the presence of counsel must be "knowing and intelligent." *Id.* at 475. The defendant argues that a court cannot find such a waiver beyond a reasonable doubt, as required under *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977), when the evidence indicates that a defendant did not know the reason for the questioning about which he is said to have waived his rights.

The defendant relies on *Schenk v. Ellsworth*, 293 F. Supp. 26 (D. Mont. 1968). In that case the defendant had been found lying on a bed next to his murdered wife's corpse. The police told him that they wished to question him "in connection with the shooting incident of his wife." Because the police did not specifically advise the defendant that they suspected that he had shot her, the court held that the

defendant's statement was not supported by a valid waiver of *Miranda* rights.

*Schenk* represents a minority view, we believe for good reason. We agree instead with the majority view that begins by recognizing that *Miranda v. Arizona supra* sets out the content of the required warnings in specific detail, but states no requirement to warn about the specific charges that prompt the questioning. *United States v. Campbell*, 431 F.2d 97 (9th Cir. 1970). On this view, awareness of actual or potential charges is simply one factor to be considered in determining whether a defendant waived his rights knowingly and voluntarily. *State v. Carter*, 296 N.C. 344, 250 S.E.2d 263, *cert. denied*, 441 U.S. 964 (1979). The ultimate question of waiver must be determined on the totality of all the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

Applying these rules to the facts of this case, we find no error. It is true that when the defendant signed the waiver form the police had not told him that they suspected that he had been involved in the bombing. That was one circumstance for the trial court to consider in determining whether the defendant gave the waiver at that point with an understanding of the potential significance of the questions and answers that might follow. There is no indication in the record that the trial judge failed to consider the evidence in just this way.

In this case the possible significance of the failure to inform the defendant of the subject of questioning was minimal, because the police did tell him of their suspicions before they asked any questions. Since a defendant can terminate questioning at any time, any waiver of rights is in reality a continuing act or series of waivers, rather than an irrevocable decision once and for all. Since the defendant here did not decline to be questioned when he found that he was a suspect in the bombing, the trial court could have found that his willingness to be questioned and to answer thereafter rested on just the kind of warning that the defendant calls for.

We find equally unavailing the defendant's argument that his refusal to sign the statement "militates against a valid waiver" of the *Miranda* rights. The lack of a signature is not inconsistent with a valid waiver. *See North Carolina v. Butler*, 441 U.S. 369 (1979). As we said before, we look to the totality of circumstances on the issue of waiver. *See Schneckloth v. Bustamonte supra*. The signature or lack of it is merely one of those circumstances, and there is no indication that the trial court failed to consider it.

We may go further in this case and note that the trial court's conclusion is supportable on the record even if we accept the

defendant's explanation for the refusal to sign, that a lawyer had told him that an unsigned statement could not be used. *Miranda* conditions a valid waiver on an understanding of the warnings that describe the rights and risks at stake. *Miranda* does not condition a waiver on the soundness of a defendant's understanding of the law as derived from sources other than the warnings. If the rule were otherwise, a defendant's preference for comforting but erroneous views of constitutional admissibility would always be proof against *Miranda* warnings, however well a defendant might understand those warnings. Therefore, a defendant's unsound legal opinions can preclude a valid waiver of *Miranda* rights only if they prevent the defendant even from understanding what the police tell him in the warnings. *See, e.g., Harris v. Riddle*, 551 F.2d 936 (4th Cir.), *cert. denied*, 434 U.S. 849 (1977). In this case, then, the defendant's refusal to sign for the reason he stated was not inconsistent with the trial court's finding beyond a reasonable doubt of knowing and intelligent waiver. We find no error in the denial of the motion to suppress.

■ The lack of signature was the basis for a different claim before the jury, the claim that the defendant did not sign the statement because it was not true. The jury revealed its concern with this issue by asking the question whether the lack of signature meant "a complete denial of the statement." In considering the argument that it was error for the judge simply to answer no, we must distinguish the perspective of lawyers from that of jurors.

Lawyers would probably have understood the judge's answer to mean that the lack of signature did not as a matter of law compel the conclusion that the defendant had denied the truth of the entire statement. Lawyers would have understood him to mean that more than one factual interpretation was possible. We believe that is what the judge intended.

To a juror, however, we believe the judge's answer probably meant that the refusal to sign was not an act of complete denial or retraction. We believe that a juror would probably have taken the answer as a resolution of a factual issue, not as a statement of law that left the issue open.

Since the effect of the judge's statement must be determined from the perspective of the jury, we conclude that his answer probably had the effect of superceding the exercise of the jurors' own judgment. He therefore invaded "the exclusive province of the jury to decide what facts are proved by competent evidence." *Ewing v. Burnet*, 36 U.S. (11 Pet.) 41, 50–51 (1837), contrary to part I, article 15 of the Constitution of New Hampshire.

We are unable to conclude that the error was harmless, despite the fact that the court had earlier given the customary instructions indicating that resolution of factual issues was for the jury alone. The judge gave those instructions in the charge, but he did not repeat or allude to them when he answered the question. We doubt that the jurors would have thought to apply the relevant portion of the general charge to modify or explain the significance of the court's specific and unequivocal answer to their later question.

We therefore conclude that the answer to the question violated the defendant's right to trial by jury. We must reverse the judgment of conviction and remand the case for a new trial.

*Reversed and remanded.*

All concurred.