Strafford
No. 89-113

## THE STATE OF NEW HAMPSHIRE

v.

## NORMAN R. PLANTE

July 18, 1990

*John P. Arnold,* attorney general (*Tina Schneider,* assistant attorney general, on the brief, and *Tina L. Nadeau* orally), for the State.

*Stephen T. Jeffco P.A.,* of Portsmouth (*Stephen T. Jeffco* and *Richard N. Foley* on the brief, and *Mr. Jeffco* orally), for the defendant.

THAYER, J.   The defendant was indicted for the offenses of first degree assault and attempted murder in violation of RSA 631:1 and RSA 629:1. He was convicted of attempted murder following a jury trial in Superior Court (*McHugh,* J.), and was sentenced to the New Hampshire State Prison for ten to thirty years. On appeal, the defendant argues (1) that the trial court erred in admitting his statement after finding that he knowingly, voluntarily and intelligently waived his *Miranda* rights; and (2) that the indictments were insufficient to charge him with either offense. We affirm.

The facts are as follows. On the morning of November 9, 1988, the defendant was arrested and charged with first degree assault and burglary. On the way to the police station, the arresting officer read the defendant his *Miranda* rights, and after arriving at the station, he was placed in a cell. The defendant testified that after he was advised of his rights, he told the arresting officer that he wanted to call his attorney. The officer, however, testified that at no time while the defendant was in his custody did the defendant ask to call his attorney.

At approximately 9:00 a.m. that same day, the defendant was brought into Officer Pease's office for an interview. Officer Hart was also present during the interview. Officer Pease began by reading the

defendant his *Miranda* rights, line by line, from a standard department form. After reciting each right, Pease asked the defendant to indicate verbally whether he understood that right. Officer Pease recorded the defendant's responses by writing "Yes" at the end of each right. Once his rights were read to him, Officer Pease asked the defendant, "Do you understand each of these rights I have explained to you?" The defendant answered, "Yes I do," and wrote his initials next to his answer to that question. Pease then asked, "Having these rights in mind, do you wish to talk to us now?" The defendant answered, "Yeah," and once again initialed the form. Although the defendant testified that he asked Officer Pease during the interview if he could call his attorney, both Officer Pease and Officer Hart testified that the defendant did not at any time request to speak with an attorney.

After the defendant agreed to talk with the officers, Officer Pease asked the defendant questions and recorded his responses. The defendant was then given his statement to read over and sign, at which time he asked for his eyeglasses. Pease responded that he did not know where the defendant's glasses were. Officer Pease testified that the defendant said he could get by without them, and that the defendant then looked over the statement and signed his name. Despite the defendant's testimony that he told the officers he wanted to call his attorney, when he was permitted to make a phone call, the defendant called his sister-in-law and not his attorney.

The jury was instructed at the close of the trial not to consider the first degree assault charge and returned a guilty verdict on the attempted murder charge. This appeal followed.

■■    The first argument we will address is the defendant's claim that the trial court erred in finding that the State proved that he voluntarily, knowingly and intelligently waived his *Miranda* rights. The law is clear that before a statement can be admitted into evidence, the State has the burden of proving beyond a reasonable doubt that the defendant was apprised of his or her constitutional rights and that the subsequent waiver was voluntary, knowing and intelligent. *See State v. Sullivan*, 130 N.H. 64, 68, 534 A.2d 384, 386 (1987); *State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555–56 (1978). The waiver need not be explicit to be valid. *State v. Torres*, 130 N.H. 340, 343, 540 A.2d 1217, 1219 (1988); *State v. Sullivan*, 130 N.H. at 68, 534 A.2d at 386. In the absence of an express waiver, however, we must look to the totality of circumstances to determine whether the defendant's understanding of his rights, together with

his conduct, support the trial court's ruling that the defendant waived his rights beyond a reasonable doubt. *State v. Torres*, 130 N.H. at 343, 540 A.2d at 1219.

It is undisputed that Officer Pease read the defendant his constitutional rights on November 9, 1988, and that the defendant answered "Yes" when asked whether he understood each one. The evidence is equally clear that the defendant responded in the affirmative when Officer Pease asked him whether he wanted to talk to the officers. Although the defendant was not asked whether he "waived" his *Miranda* rights, the defendant's responses and agreement to talk support the trial court's ruling that the defendant implicitly waived his rights. The defendant's claim that he was unable to read either the form or his statement because he did not have his glasses is of little import in the absence of evidence indicating that he was somehow prejudiced without them.

■■ The defendant maintains that, prior to giving a statement, he made several requests to speak to an attorney, which were denied. As discussed above, the testimony of the defendant contradicts that of the officers, who testified that the defendant did not once ask to call an attorney. Because the trial court was in the best position to weigh the credibility of the witnesses, we will not reverse its finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary. *See State v. Lewis*, 129 N.H. 787, 791, 533 A.2d 358, 361 (1987); *State v. Copeland*, 124 N.H. 90, 92, 467 A.2d 238, 240 (1983). Upon reviewing the evidence, we hold that the totality of circumstances supports the trial court's finding that the defendant waived his *Miranda* rights voluntarily, knowingly and intelligently.

The next argument we address is the defendant's claim that the indictments returned by the grand jury were insufficient to charge him with either offense. The record indicates that on December 8, 1988, the grand jury returned indictments against the defendant for first degree assault and attempted murder. The indictment for first degree assault alleged that the defendant:

"DID PURPOSELY OR KNOWINGLY CAUSE BODILY INJURY TO ANOTHER BY MEANS OF A DEADLY WEAPON . . . BY SLICING HER THROAT AND STABBING HER WITH A LARGE KNIFE . . . ."

The indictment for attempted murder alleged that the defendant:

"DID WITH THE PURPOSE OF CAUSING THE DEATH OF . . . SLICE HER THROAT, AND REPEATEDLY TRIED TO STAB HER, WITH A LARGE KNIFE: ACTS, WHICH UNDER CIRCUMSTANCES AS HE BELIEVED THEM TO BE, WERE A SUBSTANTIAL STEP TOWARDS THE COMMISSION OF THE CRIME OF MURDER . . . ."

■ The defendant argues that the grand jury lacked probable cause to return the indictments because of the inconsistency between them. This claim has no merit. The first degree assault indictment charged the defendant with "stabbing" the victim, while the attempted murder indictment charged him with "repeatedly tr[ying] to stab" the victim. The evidence presented at trial revealed that the defendant sliced the victim's throat with a knife. In the ensuing struggle, he repeatedly tried to stab her in the stomach, and in the process cut her in the foot. Hence, the indictments were not factually inconsistent.

The defendant next argues that the trial court erred in permitting the State to amend the *mens rea* alleged in the first degree assault indictment. In light of the trial court's instructions to the jury not to consider the first degree assault charge, this issue is moot.

■ The defendant's final argument is that the indictment for attempted murder lacked the requisite specificity. While the defendant failed to discuss this claim in the body of his brief (it appears only in the heading of the argument section of his brief), he argued in his motion to dismiss that the indictment "does not contain a mens rea and the generic term murder does not sufficiently apprise [him] of the charges against him; therefore, your defendant is unable to ascertain exactly what proscribed conduct under N.H. R.S.A. 630:1(a) or (b) he is alleged to have engaged in." This claim likewise has no merit. The indictment charging the defendant with attempted murder alleges that he "DID WITH THE PURPOSE TO CAUSE . . . DEATH" engage in particular acts. RSA 629:1, I, provides that a person must act or omit to act "with a purpose that a crime be committed" in order to be guilty of the inchoate crime of attempt. Although the defendant does not explain in his brief how the indictment is defective, we assume he is attacking the indictment for its failure to specify whether he is being charged with first or second degree murder. *See* RSA 630:1(a), (b). This same argument was made in *State v. Allen*, 128 N.H. 390, 514 A.2d 1263 (1986). In reject-

ing the defendant's argument in that case, we held that "attempted murder is a generic crime comprising an act committed with the purpose to cause the death of another, when that act is a substantial step toward the causation of death." *Id.* at 396, 514 A.2d at 1267. Thus, the fact that the attempted murder indictment does not specify the degree of murder attempted does not render the indictment insufficient.

*Affirmed.*

HORTON, J., did not sit; the others concurred.