THE STATE OF NEW HAMPSHIRE

v.

RICHARD F. LOW

December 21, 1993

*John P. Arnold*, attorney general (*Janice K. Rundles*, assistant attorney general, on the brief and orally), for the State.

*Kent M. Barker*, of Nashua, on the brief and orally, for the defendant.

## MEMORANDUM OPINION

BROCK, C.J.   The defendant, Richard F. Low, was convicted after a jury trial in Superior Court (*Temple*, J.) of negligent homicide, RSA 630:3 (1986). On appeal, the defendant challenges the indictment, the failure to suppress his statements, the sufficiency of the evidence, and the failure to reconvene the jury. We affirm.

On October 28, 1989, the defendant, while hunting, shot and killed another hunter. At the scene of the shooting, the defendant made

several statements to the police. The indictment charging the defendant with negligent homicide alleged that on or about October 28, 1989, in Tuftonboro, he "did negligently cause the death of [the victim] by discharging a .54 caliber muzzle loading rifle at a moving object which he believed to be a deer, but which was in fact the deceased, the bullet striking the deceased in the back of the head causing his death."

Beginning with the defendant's challenges to the indictment, we first conclude that the indictment both alleged all of the elements of the crime of negligent homicide and informed the defendant of the offense for which he was charged with sufficient specificity that he could prepare for trial and be protected against being placed in double jeopardy. *See State v. Therrien*, 129 N.H. 765, 770, 533 A.2d 346, 348 (1987). We fail to see how the indictment was constructively amended at trial to the prejudice of the defendant's case.

Although the indictment alleged that the defendant shot at an object "which he believed to be a deer," this allegation did not, as the defendant contends, make it impossible for the State to disprove the defendant's mistake of fact defense. *See* RSA 626:3, I(a) (1986). The indictment also alleged that the defendant *negligently* caused the victim's death by discharging a rifle at an object which he believed to be a deer. *See* RSA 626:2, II(d) (1986) (defining "negligently"); *cf. State v. Pelky*, 131 N.H. 715, 719, 559 A.2d 1345, 1348 (1989) (defendant charged with "recklessly" causing serious bodily injury knows in light of statutory definition that State must prove that he was aware of and disregarded a substantial and unjustifiable risk that serious bodily injury would occur). As the trial court noted, mistake of fact would be an affirmative defense in this case only if the mistake negatives the culpable mental state required for the commission of the offense. RSA 626:3, I(a). Even if one assumes that the State admitted that the defendant mistakenly believed he was shooting at a deer, such mistake plainly would not alone negative the culpable mental state that was alleged in the indictment and that is required for commission of the offense.

The defendant challenges the denial of his motion to suppress certain statements he made after the shooting, arguing that he was in an impaired, "hypervigilant" mental state when he executed waivers of his *Miranda* rights. We will not reverse the trial court's findings on the issue of waiver unless the manifest weight of the evidence, viewed in the light most favorable to the State, is to the contrary. *See State v. Plante*, 133 N.H. 384, 387, 577 A.2d 95, 97 (1990).

Ample evidence, including both expert and lay testimony, supports the Superior Court's (*Mohl*, J.) finding that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights.

Similarly, viewing the evidence in the light most favorable to the State, we conclude that a rational jury could have found guilt beyond a reasonable doubt. *See State v. Simpson*, 133 N.H. 704, 706, 582 A.2d 619, 621 (1990).

▇ Finally, the defendant contends that the trial court abused its discretion by refusing to reconvene the jury. *See State v. Pugliese*, 122 N.H. 1141, 1147, 455 A.2d 1018, 1022 (1982). The defendant argues that interviews with the jury members following the trial indicate that jury members ignored the court's instructions and may have been influenced by knowledge of a verdict in a similar negligent homicide trial in Maine. The trial court found that the interviews disclosed neither mistake nor improper action by the jury, and clearly demonstrated that any knowledge of the Maine case did not affect the jury's deliberations and verdict. The defendant has failed to demonstrate that the trial court abused its discretion by denying his motion to reconvene the jury.

*Affirmed.*

All concurred.