Hillsborough
No. 92-322

# The State of New Hampshire

### v.

# Susan Stayman

April 5, 1994

*Jeffrey R. Howard,* attorney general (*Charles T. Giacopelli,* assistant attorney general, on the brief and orally), for the State.

*Bjorn Lange,* public defender, of Concord, by brief and orally, for the defendant.

HORTON, J.   The defendant, Susan Stayman, was convicted after a jury trial in Superior Court (*Murphy,* J.) on one count of second degree assault for beating her two-year-old daughter, Sarah. The defendant appeals her conviction arguing that the trial court erred in (1) finding that she had knowingly and intelligently waived her *Miranda* rights before giving a confession, and (2) admitting photographs of Sarah that showed injuries inflicted by both her and her boyfriend, Tim Gorham. We affirm.

On July 24, 1991, the defendant left Sarah with Gorham while she did errands. While she was gone, Gorham became angry when Sarah urinated in front of him, and he kicked her between the legs and then hit her in the head three times, ultimately knocking her unconscious. Gorham then called an ambulance. The defendant returned to find the police at her apartment. She and Gorham were taken to the Nashua police station.

At the police station, Detective Wayne MacDonald asked to speak with the defendant in private. She agreed. MacDonald began by asking the defendant background questions, ascertaining, *inter alia,* that she had not been at home when Sarah was injured. After half an hour, MacDonald stopped the interview to confer with Detective Daniel Donahue. Donahue reported that physicians at the hospital had discovered that Sarah had a broken pelvis, bite marks on her legs, and bruises of various ages on her body. MacDonald confronted the defendant with this information and asked if she ever physically punished her children. The defendant recounted that about six weeks before she had "lost it" and had repeatedly hit Sarah after she had dumped water out of the bathtub. Believing the defendant might be a suspect at this point, MacDonald left the interview room and spoke with Detective Curtis who told him that a neighbor, Beverly Floyd, had corroborated this story.

Having decided to arrest the defendant, Detectives MacDonald and Donahue went back into the interview room and began to review the defendant's *Miranda* rights with her using a department form. Donahue read each right to the defendant, including that "anything you say can and will be used against you." After reading each right, he asked her if she understood that right. The defendant indicated that she understood each of her rights and initialed each of them on

the form. She then read the *Miranda* form aloud. After again asking whether the defendant understood her rights, MacDonald asked if she was willing to waive them. She agreed and signed the waiver form. Donahue conducted an unrecorded interview for about one hour. The defendant then agreed to a recorded interview, which began with Donahue again confirming that she understood each of her rights.

In her recorded confession, the defendant admitted that her physical punishment of her children had recently "snowballed." She detailed the "bathtub incident" in which she had hit Sarah on the back and buttocks about six weeks before. At trial, Beverly Floyd confirmed the severity of this beating. Floyd explained that one night in June when the defendant and Sarah were over visiting, Floyd saw bruises across the whole width of Sarah's back and buttocks. Floyd confronted the defendant:

> "I asked Sue to come into the bathroom. She came in and I asked her—I said, 'What happened to Sarah?' Her exact words were to me, 'I knew that's what you were going to ask me.' I turned around and I said, 'Sue, I asked you what happened to her.' She said, 'Sarah pissed me off. She was in the tub and I pulled her out and I slapped the shit out of her.', and I says, 'It looks more like—to me like you beat the shit out of her.', and I told her 'If I ever saw another mark on that kid I would turn you in.' She never came to my house after that."

During the recorded interview, Detective Donahue also showed the defendant two polaroid photographs of Sarah that had been taken at the hospital. The photographs depicted injuries over the entirety of Sarah's body, including a black eye, a badly bruised foot, and bruises of various shades on her arms, legs, buttocks, and back. The defendant denied responsibility for the darker bruises on the buttocks and for all injuries to the face or feet, but accepted responsibility for most of the bruises on Sarah's arms and legs.

The defendant was indicted on two counts related to hitting Sarah: (1) for the bathtub incident in mid-June, and (2) for miscellaneous blows to Sarah's arms and legs in July. The defendant moved to suppress her confession, explaining at the suppression hearing that she agreed to talk to the police because she had mistakenly believed that only *false* statements she made could be used against her. The Superior Court (*Dalianis*, J.) denied the motion. The defendant also filed a motion *in limine* seeking to exclude the two polaroids and eleven other photographs of Sarah because each depicted some of the hor-

rible injuries attributable to Gorham. The Superior Court (*Murphy,* J.) denied this motion. The jury convicted the defendant on the bathtub incident count, and acquitted her on the "arms and legs" count.

The defendant first argues that the trial court erroneously found that she knowingly and intelligently waived her rights. This argument has two components: (1) the trial court applied the wrong legal standard; and (2) the factual finding that the defendant understood that *anything* she said could be used against her was against the manifest weight of the evidence. We disagree.

■  Before a defendant's statement can be admitted into evidence, the State must show beyond a reasonable doubt that the defendant was apprised of her constitutional rights and that any waiver was knowing and intelligent. *State v. Plante,* 133 N.H. 384, 386, 577 A.2d 95, 97 (1990). The State must show that the defendant actually understood her rights, not that she reasonably should have. *See State v. Jones,* 125 N.H. 490, 494, 484 A.2d 1070, 1073 (1984); *State v. Bushey,* 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982). The understanding required is of the rights and risks at stake as expressed in the warnings, not rights as understood from other sources. *State v. Jones,* 125 N.H. at 494, 484 A.2d at 1073.

The defendant first argues that the trial court erred as a matter of law in holding that the defendant was required to clarify her misunderstanding of her rights. After correctly reciting the law of knowing waiver, the trial court stated:

> "In this case, the Court finds beyond a reasonable doubt that the defendant's waiver of her *Miranda* rights was voluntarily, knowingly and intelligently made. In essence, the defendant's argument against admission of these statements is that she believed that only the *false* things that she might say could be used against her. Defendant is well-spoken, if not highly educated. She thinks before she speaks and she chooses her words carefully. *This Court cannot credit her argument.* The *Miranda* process informs her clearly that *anything* she says can be used against her. There is no ambiguity in that right. Even if the defendant held this mistaken belief, she did not ask about the apparent contradiction between her belief and the plain words on the form."

(Second emphasis added.) The defendant contends that this last sentence essentially placed on her a burden to clarify her mistaken belief upon being given the *Miranda* warnings. We disagree. The last

sentence imposes no burden, but reflects on the circumstances under which the warning and waiver were given. It buttresses the trial court's finding of inability to credit her version of her subjective state of mind at the time of waiver. Nor, under an interpretation of the "even if" language which implied a reasonable doubt as to that state of mind, must waiver necessarily be rejected. The defendant's rejected belief certainly could not be gleaned from the warnings provided to her and could come only from some collateral source. *See State v. Jones*, 125 N.H. at 494, 484 A.2d at 1073.

The trial court's decision to deny suppression of the confession rested solely on its earlier unequivocal finding that it did not, *as a question of fact*, believe the defendant's testimony that she thought only false statements could be used against her. The court explained why it made that finding: in essence, it observed the defendant to be intelligent and the *Miranda* warnings to be straightforward.

■■ The defendant challenges this trial court finding that the defendant did not in fact hold the erroneous belief that only false statements could be used against her. Determining whether a waiver was knowing and intelligent involves considering the totality of the circumstances. *See Plante*, 133 N.H. at 386, 577 A.2d at 97; *Bushey*, 122 N.H. at 999, 453 A.2d at 1267. We will not reverse a finding of waiver "unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary." *State v. Hurlburt*, 135 N.H. 143, 146, 603 A.2d 493, 495 (1991), *cert. denied*, 112 S. Ct. 1770 (1992). Here, the defendant was a high school graduate. She appeared alert throughout the entire interview. The trial court found her to be well-spoken, to think before she speaks, and to choose her words carefully. Before the interview, Detective Donahue separately read each right to her, which she acknowledged that she understood and which she initialed on the waiver form. She read the entire waiver form aloud before signing it. The rights read to, and by, the defendant clearly and unambiguously stated that *anything* she said could, and would, be used against her. Considering this evidence in a light most favorable to the State, we have little difficulty holding that the trial court's finding beyond a reasonable doubt of a knowing and intelligent waiver was not error and the admission of the defendant's confession based on that finding was proper.

The defendant next argues that the trial court erred by admitting photographs of Sarah that showed not only injuries inflicted by the defendant, but also more serious injuries inflicted by Gorham, including a black eye, bruised feet, and large, dark bruises on Sarah's buttocks. Although we believe that the photographs should have

been cropped to depict only injuries caused by the defendant, we hold that in light of their high probative value, the level of unfair prejudice created by their publication to the jury did not rise to one that requires reversal.

■ New Hampshire Rule of Evidence 403 provides in part:

"Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

(Emphasis added.) This determination is a matter of discretion for the trial court, *State v. Brooks*, 126 N.H. 618, 625, 495 A.2d 1258, 1263 (1985), which we will not disturb absent an abuse of that discretion. *Id.* In order to establish an abuse of discretion, the defendant must show that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of [her] case." *State v. Hotchkiss*, 129 N.H. 260, 264, 525 A.2d 270, 272 (1987) (quotation omitted). We hold that the defendant has not met that burden.

■ By the State's own admission, all the bruises inflicted during the June bathtub incident would have disappeared by July 24, when the first photographs were taken. In other words, the photographs were only relevant to the count based on the infliction of miscellaneous bruises to Sarah's arms and legs in July. There is no requirement, however, that evidence be relevant to all counts before the jury; the law only requires that it be relevant to one. *See* N.H. R. Ev. 401, 402. Further, it is of no consequence that evidence is relevant only to a count on which the defendant is found not guilty. *See id.* In sum, then, our inquiry into the probative value of the photographs focuses solely on the "arms and legs" count.

We find that the photographs were highly probative with respect to this count. When confronted by Detective Donahue with the two polaroid photographs showing bruises all over Sarah's body, the defendant said, "Well I didn't directly hit her where all of them bruises are. It mainly was on the sides of the arms." After Donahue directed her attention to bruises depicted on Sarah's legs, the defendant explained, "These ones here that are fading away a little between the darker spots here, that was from where I hit her in the leg a couple of weeks ago." The defendant admitted having hit Sarah three times during that incident. Finally, the defendant offered the unsolicited comment:

"I ain't saying that I did all of the bruises because I did not touch her on the face and I have no idea what happened to

her foot. And I can account for the bruising that might be shown in the pictures that belong on the sides of her legs and anything that might be showing on her arms."

Considering that all eleven photographs admitted at trial depicted injuries to Sarah's arms and/or legs for which the defendant acknowledged responsibility, we find each to be highly probative on the arms and legs count.

■ Notwithstanding that the photographs were highly probative, we recognize that their presentation in an uncropped form created *some* risk of unfair prejudice to the defendant. Although the defendant filed a motion *in limine* to exclude the photographs, nothing in the record suggests that she requested in the alternative that only portions of the photographs be shown to the jury. Where a defendant fails to make such a request, we would encourage the trial court to act *sua sponte*. Here the trial court did, however, firmly instruct the jury how it should consider the photographs:

> "[Y]ou must concentrate your efforts and determinations on the questions that are really before you, not the treatment alleged to have been committed by someone else but the treatment alleged to have been committed by this defendant . . . ."

In this vein, we note that juries are presumed to follow instructions. *State v. Smart*, 136 N.H. 639, 650, 622 A.2d 1197, 1210, *cert. denied*, 114 S. Ct. 309 (1993).

■ On balance, we cannot hold that the trial court abused its discretion in admitting the photographs based on its finding that the risk of unfair prejudice did not *substantially* outweigh their probative value.

*Affirmed.*

All concurred.