Grafton
No. 93-192

THE STATE OF NEW HAMPSHIRE

v.

HAILE SELASSIE GIRMAY

December 30, 1994

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman* and *John A. Stephen*, assistant attorneys general, on the brief, and *Mr. Zuckerman* orally), for the State.

*Albert E. Scherr*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The defendant, Haile Selassie Girmay, was indicted on two counts of first degree murder, RSA 630:1-a (1986). He asserted an insanity defense and, after a non-bifurcated jury trial, was convicted in the Superior Court (*Smith*, J.) on both counts and found sane. On appeal, the defendant contends that the trial court erred, under part I, article 15 of the State Constitution, by (1) denying him the right to present all proofs favorable to his case, and (2) admitting into evidence his statement to police. We affirm.

The defendant, an Ethiopian graduate student in geophysics at Uppsala University in Sweden, traveled to Hanover to visit his fiancee, Selamawit Tsehaye, and her female roommate, Trhas Berhe. Both women were Ethiopian graduate students at Dartmouth College. While the defendant was staying at the women's apartment, his fiancee told him that she was ending their engagement. A few days later, during the early morning hours of June 17, 1991, the defendant entered the bedroom where the two women were sleeping and killed them with an axe. A neighbor heard screams coming from the apartment and summoned the police. After the police arrived and knocked on the apartment door, the defendant came to the door, shook the officer's

hand and volunteered, "I killed them. I killed them with an axe." He was taken to the Hanover police station, where the *Miranda* warnings were read to him. Later that day, the defendant gave a lengthy tape-recorded statement to the police.

The defense sought to call three expert witnesses at trial—two psychiatrists and James McCann, Ph.D., a professor of history and the director of the African studies center at Boston University. Dr. McCann intended to testify about the general cultural, political, and historical background of Ethiopia during the defendant's life; the social and political dynamics of the Ethiopian civil war; and social customs regarding marriage, gender relationships, and attitudes towards insanity in Ethiopia. The State moved *in limine* to exclude Dr. McCann's testimony on the ground that it was not relevant. The trial court initially granted the State's motion in part, ruling that Dr. McCann would be allowed to testify only "to those features of Ethiopian culture upon which the psychiatric witnesses [might] rely in forming their opinions as to the defendant's state of mind at the time of the alleged crimes." The trial court later ruled that because the psychiatrists had not relied upon such features, Dr. McCann's testimony was not relevant and he would not be allowed to testify.

The defendant contends that the exclusion of Dr. McCann's testimony was an abuse of discretion under New Hampshire Rule of Evidence 702. We disagree. Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ The trial court excluded Dr. McCann's testimony because it found that it was not relevant.

> Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evidence which is not relevant is inadmissible. The determination of whether evidence is relevant is within the sound discretion of the trial court, and we will not reverse its determination absent evidence of abuse of that discretion. To demonstrate such an abuse the defendant must show that the evidentiary ruling was clearly untenable or unreasonable to the prejudice of his case.

*State v. Smith*, 135 N.H. 524, 525, 607 A.2d 611, 612 (1992) (citations and quotations omitted). The defendant argues that the excluded testimony was relevant to educate the jury as to the social, cultural,

and political world in which he had lived virtually all his life. The defendant failed to show, however, the relevance of that world to the issue of his state of mind at the time of the murders. In his offer of proof, defense counsel stated that Dr. McCann "would not render any opinion regarding the mental state of [the defendant] at any point." The defendant conceded that none of Dr. McCann's testimony would relate to him specifically because Dr. McCann did not know him. Counsel further conceded that his defense was not based upon his culture: "[W]e are not raising a cultural defense here, because I am submitting to the court that it's no more likely that someone in Ethiopia is going to commit the acts that [the defendant] allegedly committed than it is here."

■ Dr. Yost, the defense psychiatrist who examined the defendant, testified that the information he received from Dr. McCann simply reinforced and supported the opinions he had *already* reached in his forensic evaluation of the defendant. Dr. Yost also testified that the information served to corroborate what the defendant had already told him, but that none of Dr. McCann's information formed the basis for or changed Dr. Yost's opinions concerning the defendant's mental state. Absent a showing that Dr. McCann's proposed testimony would have had a bearing on the issue of the defendant's state of mind at the time of the murders, the defendant has failed to demonstrate that the evidentiary ruling was clearly untenable or unreasonable to the prejudice of his case. Accordingly, we find no abuse of discretion in the trial court's finding that the testimony was not relevant.

■ The defendant next argues that Dr. McCann's testimony would have corroborated details of what the defendant had told the police and psychiatrists concerning his background. Consequently, he argues that the testimony was necessary to aid the jury in evaluating his credibility concerning other matters. The defendant argues that because Dr. McCann's testimony would have corroborated the defendant's account of his own background, the testimony would have aided the jury in assessing the defendant's credibility regarding his mental state at the time of the murders. We find his argument to be without merit. Dr. McCann's testimony would simply have been cumulative. The record indicates that the jury had ample evidence from which to judge the defendant's credibility concerning his background.

Such evidence was presented by Dr. Yost and Dr. Abebe. Dr. Abebe, an Ethiopian psychiatrist, had consulted with Dr. Kuten, the psychiatrist retained by the State. As related above, Dr. Yost had already testified that Dr. McCann's information corroborated the defendant's account of his own background. Further, Dr. Abebe gave detailed testimony concerning Ethiopian marriage customs, the

Ethiopian political situation since approximately 1977, Ethiopians' attitudes toward mental illness, and how mental illness is manifested in Ethiopia.

■ In addition to arguing that the trial court abused its discretion under Rule 702, the defendant argues that the trial court denied him his right to present all proofs favorable under part I, article 15 of the State Constitution. In order for the defendant to establish a violation of this right, he "must show that the testimony he was precluded from introducing would have been material and favorable to his defense in ways not merely cumulative of other evidence." *State v. Adams*, 133 N.H. 818, 826, 585 A.2d 853, 857 (1991). Because, as stated above, Dr. McCann's testimony would have been merely cumulative, we find that the defendant has not made such a showing.

The defendant next argues that the trial court erred by admitting into evidence his tape-recorded statement to the police. He contends that his waiver of constitutional rights was invalid under part I, article 15 of the State Constitution because it was not a knowing, intelligent, and voluntary waiver. We find no merit to this argument.

■ Before the defendant's statement can be admitted into evidence, the State must prove beyond a reasonable doubt that the defendant was apprised of his constitutional rights and that his subsequent waiver was voluntary, knowing, and intelligent. *See State v. Plante*, 133 N.H. 384, 386, 577 A.2d 95, 97 (1990). The waiver need not be explicit to be valid; in the absence of an express waiver, we look to the totality of circumstances to determine whether the defendant's understanding of his rights, together with his conduct, support the trial court's ruling that he waived his rights beyond a reasonable doubt. *Id.* at 386–87, 577 A.2d at 97. We will not reverse the trial court's finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary. *Id.* at 387, 577 A.2d at 97.

The defendant was interviewed on the afternoon of June 17 by Detectives Giaccone and Fortier of the Hanover and State Police, respectively. The defendant contends that in response to the officers' questions, he indicated that he did not understand the role of a lawyer. He argues that the officers' responses to his questions were misleading, evasive, and distracting, and did nothing to rectify his lack of understanding. He argues that his waiver of his constitutional rights was thus not knowing, intelligent, and voluntary. Finally, he argues that the police obtained no explicit waiver of that right. We disagree.

The police officers initially reviewed the *Miranda* warnings with the defendant. The defendant read out loud each of the warnings and then correctly explained his understanding of each. When asked to explain

his understanding of the right to counsel before and during any questioning, he stated, "Means before I am questioned I can ask a lawyer—a law—a lawyer's advice." In answer to the officers' questions as to whether he understood his rights, the defendant explicitly answered in the affirmative.

The record further reflects that after reading a form question as to whether he was willing to waive his rights, the defendant indicated that he did not understand the advantage of having a lawyer at that time. In response, the police officers determined that the defendant was aware that there were lawyers in Ethiopia and that a lawyer, as one detective put it, "tries to keep you from being arrested or [from] going to jail" and "represents you in court." The officers then summarized that morning's events: *i.e.*, that the defendant had been taken from the scene of "some very serious injuries" and that the police were now interested in questioning him as to his possible involvement. The defendant then repeatedly affirmed that he understood his right to silence and his right to have a lawyer before and during any questioning. Finally, in response to Sergeant Fortier's question, "O.K.—understanding these rights—are you willing to answer questions," the defendant responded, "Yes."

"[A] knowing and intelligent waiver implies a rational choice based upon some appreciation of the consequences of the decision." *State v. Bushey*, 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982). The understanding required is of the warnings that describe the rights and risks at stake. *State v. Stayman*, 138 N.H. 397, 400, 640 A.2d 771, 773 (1994); *State v. Jones*, 125 N.H. 490, 494, 484 A.2d 1070, 1073 (1984). The defendant indicated his understanding that he had the right to have a lawyer, and that he could ask a lawyer for advice before any questioning occurred. Although the defendant questioned what advantage might exist in having a lawyer present at that particular time, the police officers were not obligated to explain what possible legal advantage might accrue from such presence. *See Patterson v. Illinois*, 487 U.S. 285 (1988) (*Miranda* warnings sufficiently apprise defendant of the nature of the right to counsel).

■ The responses of the police officers were not misleading, evasive, or distracting. In addition to telling the defendant that "a lawyer will represent you in court," the officers confirmed that the defendant was generally aware of the role of lawyers in his homeland. The officers' skeletal recital of that morning's events would serve to explain in context his right to have a lawyer present during questioning, not to distract the defendant's attention from the question at hand. Moreover, immediately following that recital, the officers reiterated the defendant's right to have a lawyer present before and during any questioning, explained that the defendant could choose

whether or not to answer their questions, and explained that if he decided to answer their questions, he had the choice of doing so with or without a lawyer present. The officers explained that they could not make that decision for him. In response, the defendant again explicitly acknowledged that he understood.

■ Insofar as the defendant argues that his waiver was not knowing, intelligent, and voluntary because he indicated a lack of understanding when the police first read the *Miranda* warnings over six hours earlier, we find his argument to be meritless. Although the defendant indicated some difficulty with one or two of the rights as read at that time, the police neither attempted to explain any of the warnings to the defendant nor asked him to waive any of his rights at that time. He was asked only for his name and date of birth. Any possible lack of understanding by the defendant earlier in the day when the *Miranda* warnings were given but not explained does not require a finding that he later failed to understand those same warnings after they were explained.

■ Finally, we are not persuaded by the argument that because of his Ethiopian background, the defendant's affirmative answers of "yes" or "uh-huh" to questions of whether he understood or waived his rights were simply repetitive and parrot-like in nature, but were not indicative of a valid waiver. The record indicates that the defendant had studied English since the third grade, that his study of geophysics in Sweden was conducted entirely in English, that he had taught graduate courses conducted in English, and that his ability to speak and understand English was very good.

Considering all of the evidence in the light most favorable to the State, we find that the trial court did not err in ruling that the defendant made a knowing, voluntary, and intelligent waiver.

*Affirmed.*

All concurred.