Strafford
No. 93-698

## CABLETRON SYSTEMS, INC.

v.

## BRIAN MILLER

July 27, 1995

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael R. Callahan* and *Robert J. Finn* on the brief, and *Mr. Callahan* orally), for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon, P.A.*, of Concord (*Andru H. Volinsky* and *Michael J. Sheehan* on the brief, and *Mr. Sheehan* orally), for the defendant.

BATCHELDER, J. The plaintiff, Cabletron Systems, Inc., appeals the jury verdict in the Superior Court (*Dickson*, J.) for the defendant, Brian Miller, on its suit for conversion and breach of contract and on the defendant's counterclaim for abuse of process. It argues that the trial court erred in: (1) denying its motion for judgment notwithstanding the verdict on the defendant's counterclaim; (2) admitting evidence of the net worth of the plaintiff's chief operating officer; (3) denying its motion for judgment notwithstanding the verdict on its promissory note claim; and (4) excluding evidence of the defendant's poor job performance. We reverse the defendant's verdict on the counterclaim but otherwise affirm.

The defendant began working for the plaintiff in May 1987 to institute a materials management program for the company. His job performance for nearly three years, evidenced by favorable reviews, two pay raises, and a promotion, apparently was satisfactory to the plaintiff. On April 20, 1990, however, without prior warning, the plaintiff fired him. The parties dispute both the reason for the defendant's termination and the elements of his severance package.

The plaintiff maintains that the defendant was terminated because he could not keep up with the company's explosive growth. In exchange for a release of claims against it, the plaintiff contends that it offered the defendant additional salary as though he were employed until May 31, 1990, which would also make him eligible to purchase one thousand shares of company stock at a substantially reduced price.

The defendant contends that his termination was in retaliation for his refusal to fire a female subordinate and replace her with a male. His salary through May 31, 1990, and eligibility to purchase one thousand shares were not conditioned upon the defendant agreeing to release any claims, according to the defendant. Rather, he says, the plaintiff sought his release in exchange for eligibility to purchase an additional one thousand shares of stock.

The defendant endorsed and cashed the check for the additional salary. He also took possession of and sold one thousand shares of stock. His acceptance of the terms of the release, however, which he initialed but to which he added the notation "not signed," is disputed.

The defendant subsequently filed a complaint with the Federal Equal Employment Opportunity Commission and with the New Hampshire Human Rights Commission, asserting that his termination was in retaliation for refusing to fire a female subordinate and replace her with a male. *See Scarfo v. Cabletron Systems, Inc.*, 54 F.3d 931, (1st Cir. 1995). The plaintiff, contending that the defendant's acceptance of the additional salary and one thousand shares of stock manifested his agreement to the terms of the release and barred such a complaint, sued the defendant for conversion and breach of contract. The defendant responded with a counterclaim for abuse of process, alleging that the plaintiff's suit was filed to intimidate him from pursuing his retaliatory discharge action. During trial, the plaintiff moved to amend its writ to conform to the evidence, adding, among other things, a count alleging that the defendant failed to pay an obligation under a promissory note for the one thousand shares of stock that he received at termination and later sold. The trial court denied that portion of the plaintiff's request. Following a five-day trial, the jury returned a verdict for the defendant on both counts of the plaintiff's suit and on the counterclaim for abuse of process. This appeal followed.

The plaintiff first argues that the trial court erred in denying its motion for judgment notwithstanding the verdict on the counterclaim for abuse of process. "A party is entitled to judgment notwithstanding the verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Broderick v. Watts*, 136 N.H. 153, 159, 614 A.2d 600, 604 (1992).

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." RESTATEMENT (SECOND) OF TORTS § 682, at 474 (1977). No liability exists, however, "where a party has done nothing more than carry out the process to its authorized conclusion, even though with ulterior intentions." *Clipper Affiliates v. Checovich*, 138 N.H. 271, 277, 638 A.2d 791, 795 (1994).

> The tort comprises two essential elements: an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.

> There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Id.* at 276-77, 638 A.2d at 795 (citation and quotation omitted).

The defendant contended in his counterclaim that the abuse of process was the plaintiff's institution of this action to thwart his efforts to pursue the retaliatory dismissal suit. The issuance of process itself, however, does not constitute the tort. W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 898 (5th ed. 1984). Rather, "[t]he purpose for which the process is used, once it is issued, is the only thing of importance." *Id.* at 897; *see Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981) (initiation of lawsuit cannot constitute abuse of process).

■ The defendant conceded at oral argument that the plaintiff's suit presented a valid, justiciable claim. Additionally, he testified that he had not suffered in any way as a result of being sued by the plaintiff, although he sought attorney's fees. *But see* KEETON, *supra* at 900 (generally no award of attorney's fees for defending conduct alleged to be an abuse of process). Consequently, because the only reasonable inference that could be drawn from the evidence did not support the verdict, the trial court erred in failing to grant judgment notwithstanding the verdict on the counterclaim. *See Broderick v. Watts*, 136 N.H. at 159, 614 A.2d at 604.

■ The plaintiff next argues that the trial court erroneously admitted evidence of the net worth of its chief operating officer. Whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is a matter of discretion for the trial court. *State v. Stayman*, 138 N.H. 397, 402, 640 A.2d 771, 774 (1994); *see* N.H. R. EV. 403. We will not disturb the trial court's ruling absent an abuse of that discretion. *State v. Stayman*, 138 N.H. at 402, 640 A.2d at 774.

During the examination of Craig Benson, the plaintiff's chief operating officer, the defendant elicited testimony that Benson owned between four and five million shares of Cabletron stock, which was then trading at one hundred dollars per share. The defendant maintained that this evidence of Benson's substantial wealth and interest in Cabletron was probative of a motive to be untruthful. In arguing that unfair prejudice substantially outweighs any probative value, the plaintiff cites cases involving instances where the financial position of a party was improperly admitted. *See, e.g., Baker v. Pa. Nat. Mut. Ins. Co.*, 536 A.2d 1357, 1362 (Pa. Super.

Ct. 1987), *aff'd. by an equally divided court,* 559 A.2d 914 (Pa. 1989). Here, however, Cabletron, not Benson, was the plaintiff. The plaintiff itself had introduced testimony that its annual sales had risen to 420 million dollars. Consequently, the financial success of the plaintiff was already before the jury. Although the plaintiff now argues that the trial court "compounded [the] error when it failed to give a limiting instruction to the jury regarding the purposes for which such evidence might be considered," it failed to request a limiting instruction at trial. *See Great Lakes Aircraft Co. v. City of Claremont,* 135 N.H. 270, 280, 608 A.2d 840, 847 (1992). We find no abuse of discretion in the trial court's ruling. *See State v. Stayman,* 138 N.H. at 402, 640 A.2d at 774.

■ The plaintiff next contends that the trial court erred in denying its motion for judgment notwithstanding the verdict on its promissory note claim. The plaintiff had moved during trial to amend its writ to include a count alleging that the defendant failed to pay an obligation under a promissory note for the one thousand shares of stock that he received at termination and later sold. Although the trial court denied that portion of the plaintiff's request, the plaintiff argues that the issue of the promissory note indebtedness was subsumed in its other two counts and, therefore, was properly before the jury for consideration on the merits. Even if this were true, however, the defendant's version of the facts, that the one thousand shares were given without restriction as part of his severance package, finds support in the record and thereby validates the jury's verdict. *See Broderick v. Watts,* 136 N.H. at 159, 614 A.2d at 604.

■ The plaintiff's final argument merits little discussion. The plaintiff contends that the trial court erred in refusing to allow it to introduce evidence of the defendant's poor job performance. On the contrary, when asked whether the plaintiff had "any documents and paperwork, anything in writing that we all could look at that shows an evaluation of Mr. Miller's inability to do the job during that third year," Christopher Oliver, the plaintiff's director of engineering and manufacturing and the person to whom the defendant directly reported, responded that it did not. The plaintiff's assertion of error at trial involved instead the denial of its attempt to admit "samples of the sort of goods and raw materials with which the defendant in this action dealt on a routine basis in his capacity at Cabletron

Systems," a ruling within the sound discretion of the trial court. *See Clipper Affiliates v. Checovich*, 138 N.H. at 275, 638 A.2d at 794.

*Affirmed in part; reversed in part.*

All concurred.