Merrimack
No. 95-330

THE STATE OF NEW HAMPSHIRE

v.

DAVID PREVOST

March 12, 1997

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

THAYER, J. The defendant, David Prevost, appeals a jury verdict finding him guilty of being a felon in possession of a firearm, *see* RSA 159:3 (1994), and receiving stolen property, *see* RSA 637:7 (1996). On appeal, the defendant argues that the Superior Court (*McGuire*, J.) erred by denying the defendant's motions: (1) to suppress evidence found in the vehicle in which he was a passenger; (2) to suppress statements made during a custodial interview; and (3) to dismiss the charge of receiving stolen property. We affirm.

On February 5, 1994, probation/parole officers Christopher Callahan and Elizabeth Boisvert went to a fast food restaurant in Hillsboro, where Callahan encountered the defendant, a former parolee whom Callahan had supervised. As both men exited the restaurant, a physical confrontation ensued, during which the defendant struck Callahan twice.

The defendant then entered a Ford Escort, and the driver, Alicia Curtis, drove out of the restaurant's parking lot. Officers Callahan and Boisvert followed the Escort in an unmarked State vehicle. While heading east toward Henniker in pursuit of the Escort, Callahan reported the incident to the Hillsborough County Dispatch.

Responding to the dispatch report, Sergeant Douglas Paul of the Henniker Police Department drove toward Route 9 to investigate. Sergeant Paul signaled Curtis to pull the Escort to the side of the road.

After Curtis stopped the Escort, the defendant quickly exited the car and approached Sergeant Paul with a jacket obscuring his hands. At first, the defendant disregarded Sergeant Paul's command to get back in the car, but after being ordered at least once to place his hands on the rear of the Escort, the defendant complied.

Officers Ryan Murdough and Tama Mitchell of the Hillsboro Police Department arrived shortly thereafter. Concerned for the officers'

safety, Officer Murdough frisked the defendant, handcuffed him, and placed him in the Hillsboro police cruiser.

After the defendant was placed in the cruiser, Sergeant Paul instructed Curtis to get out of the Escort. Although Curtis initially consented to Murdough's request to search her car, Curtis interrupted Murdough as he read her a consent-to-search form and requested an attorney. Murdough replied that that was fine and explained to her that the police were going to tow her vehicle and apply for a search warrant.

Murdough returned to the cruiser, leaving Curtis with Officer Mitchell. Officer Mitchell testified that Curtis made a couple of comments about wanting to leave to which Mitchell responded that she could not leave because they were going to have her car towed. Shortly thereafter, Curtis informed Mitchell that she would sign a consent-to-search form. Officer Mitchell informed Officer Murdough of Curtis' decision. Murdough read the consent form to Curtis and addressed her concern about whether she was consenting to a search of her vehicle only. Mitchell and Murdough searched the car and found a loaded revolver, that was previously reported stolen, in a blue duffle bag and a backpack containing marijuana. The defendant was placed under arrest and subsequently informed of his *Miranda* rights.

Five days later, on February 10, 1994, the defendant's brother telephoned Sergeant Paul asking whether he would accept a collect call from the jailed defendant. Sergeant Paul agreed. Sergeant Paul testified that when the defendant called a few minutes later, the defendant claimed that Curtis was not responsible for the marijuana found in the car and essentially said, "I'll tell you anything you want to know if you come up and see me."

Accepting the defendant's invitation, Sergeant Paul traveled to the jail, bringing a tape recorder with him. Prior to recording, Sergeant Paul read the defendant his *Miranda* rights. The defendant refused to sign the standard *Miranda* waiver form but verbally waived his *Miranda* rights. The defendant told Sergeant Paul, "I'll tell you some things but I won't tell you others," and then proceeded to rehearse what he wanted to say before the taping began. The defendant told Sergeant Paul that the blue duffle bag was his and that he put it in the car, but he would not tell the sergeant what was in the bag. Then Sergeant Paul began the taped interview. At the interview's conclusion Sergeant Paul asked the defendant if he had been informed of his rights, to which the defendant answered: "I know what my rights are. Correct."

The defendant was indicted on the charges of receiving stolen property and being a felon in possession of a firearm. After a

hearing, the superior court denied both his motion to suppress the evidence obtained during the search of the Escort, to wit, the gun, and his motion to suppress his statements to Sergeant Paul concerning the blue bag. After a jury trial, the defendant was convicted on both charges. This appeal followed.

## I. Motion to Suppress Evidence

The defendant first contends that the warrantless search of Alicia Curtis' automobile violated his rights under part I, article 19 of the New Hampshire Constitution and the fourth and fourteenth amendments to the United States Constitution because the police obtained her consent involuntarily. As the State does not contest the defendant's standing to challenge the search, we decline to address the issue or revisit our automatic standing doctrine. *See State v. Paige*, 136 N.H. 208, 210, 612 A.2d 1331, 1332 (1992). "We decide this issue under the State Constitution, which provides at least as much protection as its federal counterpart." *State v. Seymour*, 140 N.H. 736, 747, 673 A.2d 786, 794, *cert. denied*, 117 S. Ct. 146 (1996); *see State v. Green*, 133 N.H. 249, 260, 575 A.2d 1308, 1315 (1990).

The State bears the burden of proving by a preponderance of the evidence that the defendant's consent was free, knowing, and voluntary. "In the case of a consensual search, the State must show from all the surrounding circumstances that the consent given was free, knowing, and voluntary." *State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 498 (1979). "In reviewing a trial court's finding of voluntary consent, we will not overturn the finding unless it is without support in the record." *State v. Pinder*, 126 N.H. 220, 223, 489 A.2d 653, 655 (1985). The record in this case supports this factual finding.

■ The record supports the trial court's finding that "[t]he State has met its burden of proving by a preponderance of the evidence that Alicia Curtis gave [the police] voluntary and uncoerced consent to search her car." Officers Callahan, Paul, and Mitchell testified that Curtis appeared neither scared, upset, nor intimidated during the police stop. Although Curtis initially refused to sign the consent form and requested an attorney, "prior refusal does not necessarily invalidate a subsequent consent as involuntary." *Green*, 133 N.H. at 259, 575 A.2d at 1315. Officer Murdough testified that despite her initial refusal, Curtis subsequently did not hesitate in signing the consent form. The court concluded that Officer Murdough's statement about having the car towed was explanatory rather than coercive in nature. The trial court reasonably concluded that Curtis had her questions and reservations satisfactorily resolved and as a result voluntarily signed the consent form.

## II. *Miranda Waiver*

The defendant next argues that Sergeant Paul violated the scope of any *Miranda* waiver the defendant provided during their meeting on February 10, 1994. Specifically, the defendant alleges that he attempted to limit the discussion's topic to the marijuana found in Curtis' car and that Sergeant Paul asked questions concerning a duffle bag which were unrelated to the marijuana possession. Consequently, the defendant contends that the trial court's failure to suppress his statements, other than those regarding the marijuana, violated his State and federal constitutional rights against self-incrimination and right to counsel. We disagree.

In New Hampshire, before evidence obtained during a custodial interrogation can be used against a defendant, the State must establish "beyond a reasonable doubt that the defendant was apprised of his constitutional rights and that his subsequent waiver was voluntary, knowing, and intelligent." *State v. Girmay*, 139 N.H. 292, 296, 652 A.2d 150, 153 (1994). Because the Federal Constitution affords the defendant no greater protection in this area, we will review the trial court's ruling using the State constitutional standard. *See State v. Rathbun*, 132 N.H. 28, 30, 561 A.2d 505, 506 (1989); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

█ "Recognizing that a trial court is in the best position to weigh the credibility of the witnesses, we will not reverse its finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary." *State v. Gagnon*, 139 N.H. 175, 177, 651 A.2d 5, 7 (1994) (quotation omitted). The trial court expressly found that the evidence showed beyond a reasonable doubt that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. The record supports the trial court's finding that the defendant initially agreed to tell Sergeant Paul anything he wanted to know if Sergeant Paul went to see the defendant at the house of corrections. Before the interview commenced, Sergeant Paul read the defendant his *Miranda* rights. Although the defendant refused to sign the waiver form, Sergeant Paul testified that the defendant verbally indicated that he was willing to waive his rights and speak with Sergeant Paul. Prior to the interview, the defendant rehearsed what he was going to say during the taped interview: Alicia Curtis was innocent, the knapsack containing the marijuana was in his possession and its contents were his property, and the blue duffle bag was his and he placed it in the car. He also stated that he would not say what was in the blue duffle bag. At the conclusion of the interview, the defendant stated that he knew what his rights were.

We agree with the trial court that the State proved beyond a reasonable doubt that the defendant's statements were made pursuant to a valid waiver. The trial court found that the defendant stated that he would not communicate to Sergeant Paul the contents of the blue bag. Sergeant Paul, however, asked one question pertaining to the contents of the bag, to which the defendant replied merely that the bag contained men's clothing. Although the admission of that response may have arguably exceeded the scope of the defendant's waiver, prior to this question the defendant admitted that he owned, packed, and placed the bag in Curtis' vehicle. In addition, the defendant's answer did not acknowledge the gun's presence. Therefore, even assuming that the admission of the statement was error, we conclude beyond a reasonable doubt that it was harmless. *See State v. Vandebogart*, 139 N.H. 145, 157-59, 652 A.2d 671, 679-80 (1994).

### III. Sufficiency of the Evidence

Lastly, the defendant argues that the trial court should have dismissed the charge of receiving stolen property. The defendant argues that the evidence of his knowledge that the gun was stolen was circumstantial and did not exclude all rational conclusions except guilt. We disagree.

"In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *State v. Bissonnette*, 138 N.H. 82, 84, 635 A.2d 468, 469 (1993) (quotation omitted). The jury "determine[s] the weight and credence to be given the evidence at trial." *Id.* (quotation omitted). Additionally, the jury is permitted to "draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences." *State v. Stauff*, 126 N.H. 186, 189, 489 A.2d 140, 142 (1985) (quotation omitted). "Finally, the jury's inferences need not be premised on direct evidence, but may be based entirely on circumstantial evidence, provided that such evidence excludes all rational conclusions except guilt." *Bissonnette*, 138 N.H. at 84, 635 A.2d at 469.

To convict a defendant of receiving stolen property, the State has the burden of proving that when the defendant received the property, "he either knew it had been stolen, or believed that it probably had been stolen." *State v. Wong*, 138 N.H. 56, 64, 635 A.2d 470, 475 (1993); *see* RSA 637:7. "We have recognized that the State is rarely able to prove by direct evidence that a defendant accused of receiving stolen property possessed the requisite guilty knowledge." *Wong*, 138 N.H. at 64, 635 A.2d at 475 (quotation omitted).

■ In the present case, the State produced sufficient evidence for a jury to reasonably infer that the defendant knew or believed that the gun had been stolen. On November 11, 1993, a coin shop was robbed and the Connecticut State Police subsequently arrested George Moore for the robbery. Among other things, Moore took a Smith and Wesson .38, the same gun that the defendant had in his possession the night of his arrest. Testimony established that the defendant spent time in Connecticut with Moore after the defendant was released from prison in September 1993 but before meeting Curtis around Thanksgiving 1993. Curtis testified that the defendant and Moore were friends. In addition, the defendant and Moore were in the same unit and division at the State prison. The jury could have reasonably inferred that the defendant was in Connecticut when his friend Moore robbed the store and took the Smith and Wesson. The jury could have reasonably concluded, based on the circumstances, that the defendant believed that the gun had probably been stolen when he received it. Taking all the evidence into consideration, we believe that the jury could have excluded all rational conclusions except guilt.

*Affirmed.*

All concurred.