Sullivan
No. 96-188

THE STATE OF NEW HAMPSHIRE

v.

KEITH PATCH

December 9, 1997

*Steven M. Houran*, acting attorney general (*Jane E. Young*, assistant attorney general, on the brief and orally), for the State.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the defendant.

THAYER, J. The defendant, Keith Patch, was convicted on two counts of possession of a controlled drug with intent to sell and one count of possession of a controlled drug. *See* RSA 318-B:2, I (1995). The defendant appeals, arguing that the Superior Court (*Morrill*, J.) improperly denied his motion to suppress. We affirm.

The following facts were adduced during the hearing on the motion to suppress. The defendant and Sandra Gray lived together in the defendant's apartment for approximately eight months. In October 1995, the defendant was granted a restraining order against Gray requiring her to leave the apartment. Officer Pauline Lafleur of the Claremont Police Department served the restraining order on Gray, and permitted Gray to gather her personal belongings before leaving the apartment.

 . Upon being served the restraining order, Gray became visibly upset. As she gathered her belongings, Gray proceeded to retrieve drugs and drug paraphernalia from cabinets and other areas of the apartment and handed them to Officer Lafleur. She then detailed to Officer Lafleur her knowledge of the defendant's involvement in illegal marijuana trafficking.

Gray agreed to accompany Officer Lafleur to the Claremont Police Department to answer some questions. At the station, she explained to both Officer Lafleur and Detective Peter Thomas of the New Hampshire Drug Task Force that the defendant stored marijuana at the residence of Thomas Perras. She also informed the officers that the defendant transported marijuana in the trunk of his automobile in either a cooler, duffel bag, or beer box. The officers used this information to draft an arrest warrant for the defendant. The warrant was signed by a dispatcher of the Claremont Police Department who was also a justice of the peace.

The police located the defendant later that day at his parents' residence. Upon arrival, Officer Lafleur testified that she and Detective Thomas explained to the defendant what had transpired at his apartment earlier that day with Gray, and asked the defendant if they could search his automobile. Initially, the defendant indicated that he did not want the officers to search his automobile. When the officers then informed the defendant that they knew what was in the trunk, the defendant became visibly upset. He threw a cup he was holding on the ground and made a derogatory comment about Gray. The defendant then walked to the rear of his vehicle, took a key from his pocket, opened the trunk, and pulled out a bag of marijuana. The defendant handed the bag to one of the officers and indicated it was all he had. The officers asked if they could search the rest of the vehicle, and the defendant agreed. The police then discovered a small bag of marijuana between the two front seats.

Detective Thomas testified that the officers also asked the defendant if he would accompany them to recover the marijuana at the Perras residence. The defendant inquired as to what would occur if he did not comply. The officers told the defendant that they would

contact Perras. Detective Thomas testified that because the defendant did not want Perras contacted at work, he agreed to take the police to the Perras residence.

Once at the Perras residence, the defendant proceeded to the front door, removed a key from his pocket, and opened the door. He led the officers directly through the kitchen and living room before proceeding upstairs to a small room at the top of the stairs. The defendant showed the police a desk, a scale, and a cooler which contained marijuana. The defendant admitted that the items were his. Detective Thomas testified that no other area of the Perras residence was searched at that time.

After leaving the Perras residence, the police asked the defendant for consent to search his residence, and he refused, explaining that he felt the police presence at his residence earlier that day was sufficient. Accordingly, the police obtained search warrants for the defendant's residence and the Perras residence. The police first executed the warrant at the Perras residence, locating a quantity of marijuana, pills, and cash. The police then executed the search warrant for the defendant's residence, seizing a set of scales.

The defendant was arrested and charged with violations of the Controlled Drug Act. *See* RSA 318-B:2 (1995). Subsequently, the defendant filed a motion to suppress with the trial court. The court denied this motion and, based upon stipulated facts, found the defendant guilty of all charges.

On appeal, the defendant argues that certain evidence should have been suppressed on the following grounds: (1) once Gray was served the restraining order, she had no authority to consent to a search of the defendant's residence because she had no lawful authority over the premises; (2) evidence retrieved by Gray was not in plain view; (3) Gray violated the terms and policy of the restraining order when she retrieved the evidence; (4) the officers did not obtain valid consent for the searches of the defendant's automobile and Perras' residence; and (5) the arrest warrant signed by a dispatcher of the Claremont Police Department was invalid because the dispatcher was not a neutral and detached magistrate.

■ The defendant first argues that, having been served the restraining order, Gray was no longer authorized to remain at the defendant's residence, and therefore had no authority to consent to a search. This argument is flawed in two respects. First, the restraining order is not to be read so strictly as to prohibit Gray from retrieving her personal belongings before leaving the defendant's apartment. Gray had been living on the premises for

approximately eight months. It would have been unreasonable for Officer Lafleur to have prevented Gray from gathering her personal items.

The second flaw concerns the alleged violation of part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. We first address the State constitutional claim, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), utilizing cases from federal courts and other jurisdictions merely as an analytical aid. *State v. Grant-Chase*, 140 N.H. 264, 266, 665 A.2d 380, 382 (1995), *cert. denied*, 116 S. Ct. 1431 (1996). Because in this case State law provides at least as much protection as federal law, *see State v. Carroll*, 138 N.H. 687, 691, 645 A.2d 82, 85 (1994); *State v. Keyser*, 117 N.H. 45, 46, 369 A.2d 224, 225 (1977), we need not make a separate federal analysis. *See Grant-Chase*, 140 N.H. at 266, 665 A.2d at 382.

The "search" was conducted by a private party, not by Officer Lafleur or another State actor. The protection against unreasonable searches and seizures is aimed at preventing unlawful *State* action. *See Keyser*, 117 N.H. at 46, 369 A.2d at 225; *see also Carroll*, 138 N.H. at 691, 645 A.2d at 85 (State Constitution is offended only by State action, not by even most outrageous behavior by a private party).

The defendant does not argue that Gray was acting as an instrument or agent of the State when she gathered the evidence and turned it over to the police. *Cf. Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 614 (1989) (fourth amendment inapplicable to actions of private party unless private party acted as instrument or agent of the government). Rather, the defendant argues that, once Gray began producing the contraband, Officer Lafleur had a duty to prevent Gray from further gathering evidence and to obtain a warrant instead. The trial court, however, found that "Gray, on her own, not at the direction of Officer Lafleur and not as an agent of Officer Lafleur, delivered contraband to Officer Lafleur that belonged to [the defendant]. Once Officer Lafleur saw the incriminating nature of these items it was lawful for her to seize them." Considering Gray's actions in light of all of the circumstances, we agree with the trial court's determination that the items were properly seized. Gray testified that Officer Lafleur did not search the house, did not ask Gray to conduct a search, and did not otherwise ask for any assistance from Gray, aside from asking Gray if she would come to the police station to answer some questions. Gray testified that she gave Officer Lafleur the drugs and drug paraphernalia voluntarily. *Cf. Coolidge v. New Hampshire*, 403 U.S.

443, 488 (1971) (no search implicating fourth amendment constitutional protections where no police attempt to coerce, dominate, or direct private party's actions). One might question Officer Lafleur's competence had she refused to accept drugs and drug paraphernalia that were voluntarily given to her. *See id.* at 489.

Moreover, Officer Lafleur testified that after receiving the contraband, she told Gray she did not want Gray to go into the defendant's "personal items to pull out ledgers and things." This testimony demonstrates that the State did not conduct a search, but rather Gray conducted the search on her own volition. As there was no State action, there was no violation of the defendant's constitutional rights; thus, the evidence was properly admitted. *See Carroll*, 138 N.H. at 691, 645 A.2d at 85; *Keyser*, 117 N.H. at 46, 369 A.2d at 225.

The defendant next argues that the drugs and contraband "were in closed places before Gray ferreted them out." The defendant contends that Officer Lafleur "had a duty to stop Gray" from retrieving the contraband because it was not in plain view. We disagree.

The defendant's argument, which is based on the plain view exception to the warrant requirement, is misplaced. As discussed above, the protections against unreasonable searches and seizures apply only to State action. *See Keyser*, 117 N.H. at 46, 369 A.2d at 225; *cf. Carroll*, 138 N.H. at 691, 645 A.2d at 85. Therefore, we need not rely on exceptions to the warrant requirement to justify the search. No warrant was required. The retrieval of drugs and contraband was conducted by Gray, not the State.

The defendant next argues that Gray violated the terms and policy of the restraining order when she retrieved the evidence. This argument is likewise without merit. The restraining order prohibited Gray from: (1) "entering the premises wherein the [defendant] resides"; (2) "taking, converting or damaging property in which [the defendant] has a legal or equitable interest"; and (3) "harrassing [*sic*], intimidating or threatening [the defendant]." As discussed above, the restraining order is not to be so strictly construed as to prevent Gray from gathering her personal belongings before leaving the defendant's residence. As for "taking, converting or damaging property in which [the defendant] has a legal or equitable interest," the defendant cannot reasonably argue that he had a legal or equitable interest in drugs and contraband, the possession of which is illegal. *See* RSA 318-B:2, I. Finally, we refuse to protect defendants from any perceived "harassment" when a private party,

not acting as an instrument or agent of the State, reveals their criminal activity to law enforcement officials.

 The defendant next argues that the officers did not obtain valid consent for the search of the defendant's automobile and the Perras residence. He raises both State and federal constitutional claims. "We decide this issue under the State Constitution, which provides at least as much protection as its federal counterpart." *State v. Prevost*, 141 N.H. 647, 650, 690 A.2d 1029, 1031 (1997) (quotation omitted).

Valid consensual searches require the State to prove "by a preponderance of the evidence that the defendant's consent was free, knowing, and voluntary." *Id.* "In reviewing a trial court's finding of voluntary consent, we will not overturn the finding unless it is without support in the record." *Id.* (quotation omitted). In this case, the record supports the trial court's factual findings that the defendant's consent was free, knowing, and voluntary.

During the hearing on the defendant's motion to suppress, the officers testified that the defendant initially refused to consent to a search of his automobile trunk. Detective Thomas then explained that he knew what was in the trunk and that if there was nothing inside, there should be no problem in looking. The defendant became visibly upset, threw the cup he was holding to the ground, and made a derogatory comment about Gray. Without further request or comment from the officers, the defendant walked to his vehicle, opened the trunk, and removed a bag of marijuana. The defendant handed the marijuana to the officers and indicated that there was nothing else in the vehicle. The officers then asked the defendant for permission to search the rest of the vehicle, and he agreed.

These facts do not suggest any type of intimidation, coercion, or other unlawful police action. The defendant testified that the officers threatened to search his parents' house if he did not cooperate, shoved the arrest warrant in his face, and told him if he did not cooperate they would arrest him and eventually retrieve what was in the trunk. The trial judge (*Morrill*, J.), however, found the officers' testimony more credible than the defendant's, and specifically stated that he did not believe the defendant's testimony that the police threatened to search his parents' house or that the police shoved the arrest warrant under his nose. The officers testified that the arrest warrant was in the police cruiser when they approached the defendant and that they never threatened the defendant in any way. The officers never indicated that they had a search warrant or that they had the authority to search without a warrant. "We will

defer to the trial court's determination on witness credibility unless we find that no reasonable person could have come to the same conclusion after weighing the conflicting testimony." *State v. Crotty*, 134 N.H. 706, 711, 597 A.2d 1078, 1082 (1991) (quotation omitted).

The trial court did find that when the defendant asked the officers what they would do if he refused to cooperate, they told him that they would apply for a search warrant. Informing the defendant of viable alternatives, however, does not necessarily vitiate consent. *See United States v. Larson*, 978 F.2d 1021, 1024 (8th Cir. 1992); *United States v. Garcia*, 890 F.2d 355, 361-62 (11th Cir. 1989). As for the defendant's initial refusal to consent to a search of the trunk of his automobile, a "prior refusal does not necessarily invalidate a subsequent consent as involuntary." *State v. Green*, 133 N.H. 249, 259, 575 A.2d 1308, 1315 (1990). Although the defendant was initially reluctant to cooperate with the officers, the record supports the conclusion that the extent of the officers' knowledge caused him to change his position.

Regarding the search of Perras' residence, although the defendant testified that the officers threatened to "go get [Perras] out of work and go get a search warrant and just kick the door in and get what is at [Perras'] house," the trial judge found only that the police threatened to get a search warrant, a realistic alternative available to them. In response to the defendant's inquiry as to what the police would do if he refused to consent to a search of the Perras residence, the police informed him that Perras would be contacted at work. Thereafter, the defendant consented to turn over the contraband in the Perras residence. The fact that the defendant consented to a search of his vehicle's trunk and to portions of the Perras residence, but refused to consent to a further search of his own residence, indicates that the defendant understood his right to refuse to consent to a search, and further that the consent was knowingly, voluntarily, and freely given. *See Prevost*, 141 N.H. at 650, 690 A.2d at 1031.

The defendant argues that his custodial status casts doubt on the voluntariness of the consent. The trial court found that although not under formal arrest, the defendant was in custody prior to the search of his vehicle. "[C]ustody alone has never been enough in itself to demonstrate a coerced . . . consent to search." *United States v. Watson*, 423 U.S. 411, 424 (1976); *see also United States v. Tolias*, 548 F.2d 277, 278 (9th Cir. 1977). When the defendant gave his consent, the defendant was in his parents' yard, the officers' weapons were not drawn, he was not in handcuffs or in any way restricted, and the officers testified that they in no way threatened

him. The officers explained to the defendant what viable options were available to them if he chose not to consent. Based on the totality of the circumstances, the trial court was justified in finding that the defendant's consent to search the vehicle's trunk and the Perras residence was knowingly, voluntarily, and freely given.

We need not address the defendant's argument that the arrest warrant signed by a dispatcher of the Claremont Police Department was invalid as no evidence was obtained as a result of the arrest warrant. Accordingly, the trial court properly denied the defendant's motion to suppress.

*Affirmed.*

All concurred.